HENRY HEINLEIN v. THE IMPERIAL LIFE INSURANCE
COMPANY.[1]

*Life insurance—Surrender of policy—Fraud—Revival—Tender of
premium—Insurable interest—Wager policy.*

1. The president and secretary of a life insurance company, aided
by the local agent,—who had secured insurance upon the life
of a mother, payable to her son if he survived her, and, if
not, to her estate,—by falsely representing to the son that the
insurance was graveyard insurance, and therefore void, induced
the son to surrender the policy on receipt of the premiums,
which he had paid in behalf of his mother, he having general
charge of her affairs. And it is held that the facts bring the
case within the rules laid down in *Tabor v. Insurance Co.*,
44 Mich. 324, and that a bill will lie in behalf of the son to
revive the policy, the same not being a wager contract.

2. It was urged as a defense to the suit to revive the policy that
a premium fell due after the surrender of the policy, and had
not been paid or tendered. And it is held that this contention
should not prevail, because:

*a*—Payment or tender of payment of premiums is not neces-
sary where the insurers have already declared the policy for-
feited, or done any act which is tantamount to a declaration
on their part that they will not receive it if tendered; citing
May, Ins. § 358.

*b*—Prior to such surrender and to the maturity of said pre-
mium the defendant, by its president, had sent a written
notice to the insured that the premiums on her policy would
be thereafter collected at the home office, instead of at a cer-
tain bank in the city where she resided, and where they had
been formerly paid, and that she would receive due notice of
the day when the premiums would become due, and the
amount of the same, which notice was not given.

Appeal from Bay. (Cobb, J.) Submitted on briefs
April 13, 1894. Decided June 26, 1894.

[1] With this case as reported in 25 L. R. A. 627, is a note on
wager insurance policies.

Bill to revive a life insurance policy. Complainant appeals. Decree reversed, and one entered restoring the policy, and for the amount thereof. The facts are stated in the opinion.

*Tarsney & Wicker*, for complainant.

*Hoyt Post*, for defendant.

McGRATH, C. J.   This is a bill to revive a life insurance policy, issued December 22, 1890, on the life of Margaretha Heinlein, and payable " to Henry Heinlein, Jr., her son, if living; if not living, to the executors, administrator, or assigns of the said insured."

One Smith, an insurance agent, applied to Henry Heinlein to take out insurance.   Heinlein replied that he did not desire to take out a policy, but that his mother had spoken to him about insurance, and he thought that she wanted insurance.   Smith requested him to see his mother, and let him know.   Afterwards Smith, who was accompanied by a physician, met Heinlein, and asked if the latter had seen his mother.   Heinlein replied that he had, and Smith suggested that they go right up to the house, and they did so.   The application was filled out, and the medical examination made.   The defendant company declined to take the full amount, viz., $10,000, but issued a policy for $5,000, and the Berkshire Life took a policy for $3,000; a new application being made out, and another medical examination having been made.   The first premium was paid by check on a bank at Saginaw, signed " M. Heinlein, by Henry Heinlein."   The insured resided at East Saginaw, and it would appear from the testimony that Henry Heinlein also resided there at the time the policy was taken out.   The subsequent premiums were payable quarterly, and were paid by Henry Heinlein, although he testified that he had general charge of his

mother's affairs, and paid the premiums in her behalf. The policy seems to have lapsed in 1891, owing to the failure to pay the premium promptly, but a health certificate was furnished, and the policy was restored.

Margaretha Heinlein was taken sick in the spring of 1892, and died July 2 of that year. On June 14, 1892, the president of the defendant company and the secretary thereof and the general agent of the Berkshire Life Company went to Bay City, where complainant then resided, and secured both policies from Henry Heinlein, refunding to him the amount of the premiums paid. It appears that, before going to Bay City, the officers of these companies had been to East Saginaw, and had there learned of the illness of the insured. Upon arriving at Bay City, they sought out Smith, who had solicited the insurance, and secured his services to aid in recovering the policies. The interview with Smith is described by him as follows:

"We went up to a room, Mr. Angus and Mr. Oliver and Mr. Early and myself, and Mr. Angus, I think, was the one who broached the subject to me, and told me that they were there to see what could be done with the Heinlein matter. As near as I can remember, Mr. Early showed me the papers, and asked me as to the certificates of health, etc., and wanted to know if I knew that that was graveyard insurance. I told him, 'no, sir;' I didn't consider it in that light; that the insurance was solicited in the regular way. He says: 'I understand that this, where the party is paying the premium on his mother, makes it graveyard insurance or speculative insurance.' I told him I didn't think that that was the case,—that this was a case of that kind,—because, in Mr. Heinlein's statement to me previous to this, he told me what his mother wanted the insurance for,—to protect the property of some minor children; that is what she was taking this insurance for. And Mr. Angus said to me, or Mr. Oliver,—I could not say which one; the conversation was between the two of them,—they said it was graveyard insurance, and that, if he pressed it, they should put it into the courts, and it

would be a question whether they would get anything or not, and stated to me that they wanted to take them up, and would pay for the taking up of the policies, and wanted to know what I thought about it. I says: 'Gentlemen, if I have done anything wrong in any way, shape, or manner, I am willing to right it.' They wanted to know how I was willing to right it. I told them I was willing to go to Mr. Heinlein, and state to him their statements, and the only condition that I would go would be that they would pay the premiums in full that Mr. Heinlein had paid. And Mr. Early and Mr. Angus talked together, and wanted to know if I would go and do that, and I told them I would, and Mr. Angus signed a check for Mr. Oliver, and Mr. Early signed a check payable to my order."

He says, further:

"I told Mr. Heinlein that, as I understood it, we had got ourselves in trouble with that insurance; and he wanted to know how, and I told him Mr. Oliver says we had made a mistake in writing the insurance in that way, making him the beneficiary, as it came under the head of graveyard insurance, and that they wanted to settle the matter, and they would do so by paying him back the entire amount of his premiums that he had paid if he would release the policies, both for the Imperial and for the Berkshire; and Mr. Oliver says to him, 'That is the facts in the case,' as near as I can remember what he said. 'It comes under the head of old folks' insurance, and ain't legitimate business.'"

Complainant testifies that he met Oliver and Smith in the street, and "Smith said: 'You are the man we are looking for.' We went into a store, and Smith says: 'We have got ourselves in a nice box. We have got ourselves in trouble.' I asked him in what way." Oliver is then introduced, and he proceeds to assert that the policies are void; that it was graveyard insurance; that Heinlein didn't have any insurable interest in his mother, and she had no insurable interest in him; that, if the insured should die, Heinlein could recover only the premiums paid in; that they would refund the premiums if he would surrender

the policies; that, unless he accepted, they would throw it into the courts, and then he would get nothing; that he had insured his mother for a speculation; that they were in haste to leave the city. Heinlein suggested that the Insurance Commissioner lived in the city, and that he would go to him for advice; but Oliver said: "There is no use going to him. He cannot help you any in this matter, and, if you don't take what we offer you, why, we will take it, and throw it into the court, and you will not get anything." The matter seems to have been closed out within a few hours. Heinlein went to the office of Shepard & Lyon, attorneys. The parties went with him. Neither Shepard nor Lyon was in. Heinlein then went to the office of a justice of the peace. They went with him, and the matter was then concluded. From the time that Oliver and Smith met Heinlein until the policies were received by them, Heinlein was not out of their sight. Heinlein had a short talk with the justice about the matter. Oliver and Smith were in the room, and Oliver reiterated the assertions as to speculative and graveyard insurance, and exhibited to the justice a pamphlet containing some reference to the subject of speculative insurance, and read therefrom.

We think that the facts bring the case within the rules laid down in *Tabor v. Insurance Co.*, 44 Mich. 324, and that complainant is entitled to the relief prayed. See, also, *Renard v. Clink*, 91 Mich. 3. There is no ground for the claim that this was a wager policy. It affirmatively appears that the first premium was paid by the insured, and the fact that the check for the premium was signed as it was, and was, as thus signed, presented and honored, supports Heinlein's claim that he was acting for his mother, had general charge of her affairs, and for her forwarded the other premiums. Mr. May says, at section 112, if the person whose life is insured pays the premiums, there can

be no doubt as to the validity of the policy, even if the beneficiary has no interest, since his own interest supports the policy. *Campbell v. Insurance Co.*, 98 Mass. 381; *Hogle v. Insurance Co.*, 6 Rob. (N. Y.) 567; *Scott v. Dickson*, 108 Penn. St. 6; *Amick v. Butler*, 111 Ind. 578. It is apparent from the policy itself that the mother's regard for the son's interest was not the only motive for its pro-curement. The record discloses that the policy was made payable in the event of the death of Henry Heinlein to the estate of the insured, at the special instance of the insured. This fact tends to corroborate what Smith says as to the purpose of the policy.

It is urged, however, that a premium fell due July 1, following the surrender, which was not paid or tendered. There are two reasons why this contention should not prevail:

*First.* Payment or tender of payment of premiums is not necessary where the insurers have already declared the policy forfeited, or done any act which is tantamount to a declaration on their part that they will not receive it if tendered. May, Ins. § 358.

*Second.* On February 12, 1892, the company, by its pres-ident, had sent a written notice to the insured, which contained the following:

"Your premiums on insurance with this company will be collected hereafter at this office, instead of Saginaw bank, and must be here before 12 o'clock noon on day of maturity. You will receive due notice of day when due, amounts, etc."

See May, Ins. §§ 356, 356a.

The decree of the court below will be reversed, and a decree entered here for the complainant, restoring the policy, and for the amount thereof, with costs of both courts.

The other Justices concurred.