### FOSTER v. PREFERRED ACCIDENT INS. CO.

(Circuit Court, E. D. Pennsylvania. November 6, 1903.)

#### No. 10.

1. LIFE INSURANCE—VALIDITY OF CONTRACT—INSURABLE INTEREST OF BENEFICIARY.

A person may effect insurance on his own life in good faith, paying the premiums therefor himself, and have the policy made payable to any beneficiary he chooses, and in such case the company cannot set up the want of insurable interest of the beneficiary to defeat the policy.

2. SAME—ESTOPPEL TO PLEAD DEFENSE.

A life insurance company is estopped to set up the want of insurable interest of the beneficiary in a policy taken out and maintained by the insured, although it contained a clause that "all claims under this policy shall be subject to proof of interest" where the company had knowledge of such lack of insurable interest from the beginning, the beneficiary being described in the policy as the "friend" of the insured, but issued the policy, and continued to receive the renewal premiums thereon without objection.

At Law. On motion by defendant for judgment on reserved point notwithstanding the verdict.

¶ 1. See Insurance, vol. 28, Cent. Dig. § 138.

Melick, Potter & Dechert, for plaintiff.
Richard C. Dale, for defendant.

J. B. McPHERSON, District Judge. This is a suit upon a policy of accident insurance taken out in August, 1900, by Charles S. Partridge, whereby the defendant promised, inter alia, to pay $2,500 to "Mrs. Mary G. Foster, friend," if the insured should die as the result of an accident. Upon this policy the insured paid nine quarterly premiums, and died from accident on September 8, 1902. The defense is the beneficiary's want of insurable interest, and upon that point the undisputed facts are as follows:

The insured was an attorney at law, and resided in Florida, where Mrs. Foster also had her residence until she removed to Philadelphia not long ago. He came to live with her family when he was 18 years old, received his legal education in the office of her husband, and was considered a member of the family until the day of his death, although there was no relationship, and although he had not been living in the same household with Mrs. Foster for several years before he died. He paid nothing for his boarding during the 10 or 12 years of his actual residence in her house, and was in all respects on the footing of a near and affectionately regarded relative by blood. When he died he owed Mrs. Foster $250, which he had borrowed two or three years before. At the time the policy was taken out, he wrote a letter to Mrs. Foster, of which the following portion refers to the insurance:

"Sanford, Florida, August 13, 1900. My dear Mrs. Foster: I have taken out an accident policy in the sum of $5000.00 in the Preferred Accident Assurance Company of New York City, Capt. Manley of this place Agent, who can give all particulars. I have had the policy made payable to you, so that in case of any accident resulting in death you can collect the money. I do this as my mother is getting old and it would be a burden for her to have it on her mind. I wish you would dispose of the money in case anything should happen as follows: Send my mother $2000, take $2000 for yourself and the other thousand use to pay any debts etc. that may come up. Whatever of the balance there might remain from the $1000 you are also to keep. I think that makes the insurance matter plain."

Mrs. Foster had nothing to do with taking out the policy, and paid none of the premiums.

Whether these facts would have supported a policy taken out and maintained by Mrs. Foster on the life of the insured may admit of question. I express no opinion upon this subject, nor upon another possible question, namely, whether the testimony should have been submitted to the jury to determine the good faith of the transaction, its freedom from the element of speculation. The defendant did not ask that the case should be passed upon by the jury. On the contrary, the good faith of the parties was not disputed, the sole defense being that the beneficiary had shown no insurable interest whatever, and that the court should so declare as matter of law. The defendant's argument is that it makes no difference what the form of the transaction may be—whether the policy be taken out by the insured himself or by the beneficiary; in either case the result is that the beneficiary has acquired an interest in the contract and in the life of the insured, and therefore that public policy denies to the plaintiff the right to re-

cover, unless her interest is shown to be such as is recognized by the law as insurable. It is undoubtedly true that during the discussion and development of the doctrine of insurable interest the courts have used language which supports this argument. For example, in Gilbert v. Moose's Adm'rs, 104 Pa. 74, 49 Am. Rep. 570, the Supreme Court of Pennsylvania declared:

"As a beneficiary merely, having no interest in the life, it seems to us very clear that he [referring to a stranger in blood, in whose favor the policy was issued] could lawfully have no interest in the policy; for if we admit the contrary, if we admit that one may insure his life for the benefit of another, who is neither a relative nor a creditor, our whole doctrine concerning wagering policies goes by the board. The very foundation of that doctrine is that no one shall have a beneficial interest of any kind in a life policy who is not presumed to be interested in the preservation of the life insured."

The Supreme Court of the United States has also used similar language in several cases, of which Crotty v. Ins. Co., 144 U. S. 621, 12 Sup. Ct. 749, 36 L. Ed. 566, is an example. It is there said:

"It is the settled law of this court that a claimant under a life insurance policy must have an insurable interest in the life of the insured. Wagering contracts in insurance have been repeatedly denounced. Cammack v. Lewis, 15 Wall. 643 [21 L. Ed. 244], in which a policy of $3,000 taken out to secure a debt of $70, was declared 'a sheer wagering policy.' Connecticut Mutual Life Insurance Co. v. Schaefer, 94 U. S. 457, 461 [24 L. Ed. 251], in which it was said: 'In cases where the insurance is effected merely by way of indemnity—as where a creditor insures the life of his debtor for the purpose of securing his debt—the amount of insurable interest is the amount of the debt.' Warnock v. Davis, 104 U. S. 775 [26 L. Ed. 924]."

Upon the other hand, both these courts have distinctly declared otherwise in words that are quite as clear. Thus, in Connecticut Ins. Co. v. Schaefer, 94 U. S. 457, 24 L. Ed. 251, it is said:

"There is no doubt that a man may effect an insurance on his own life for the benefit of a relative or friend. * * * The essential thing is that the policy shall be obtained in good faith, and not for the purpose of speculating upon the hazard of a life in which the insured has no interest."

So, in Ins. Co. v. Robertshaw, 26 Pa. 189, Mr. Justice Sharswood used the following language:

"For myself, I can see no good reason why a man having an insurable interest may not insure it, and present the policy as a gift to a friend; and, if such an agreement to give be made at the very time of the contract, why may not the policy be made at once in the name of the donee, the whole transaction being bona fide, no fraud on the company intended?"

In Scott v. Dickson, 108 Pa. 6, 56 Am. Rep. 192, the court said:

"Can there be a doubt that he intended the policy for his friend when he made the application? Had it been made so in form, had he instructed the company to make the loss payable to John F. Scott in case of his death, the transaction would have been perfectly legal, and open to no objection as a wagering policy. The validity of such policies has never been doubted."

In Carpenter v. Ins. Co., 161 Pa. 15, 28 Atl. 944, 23 L. R. A. 571, 41 Am. St. Rep. 880, the point decided in Gilbert v. Moose's Adm'rs, supra, is declared to be this:

"Can one having no interest in the life of the insured, for the purpose of speculation only, acquire, by assignment or otherwise, such title to the policy as the law will enforce?"

In none of these cases was the point decided that is now presented, and the dicta on the one side may be fairly held to balance the dicta on the other. But there is a line of decisions which deal with the precise question now before the court. That question is whether, in a suit on a policy that was taken out and maintained by the insured on his own life, but in favor of a third person as beneficiary, the company may set up the beneficiary's want of insurable interest? Or, to state it in another form, the question is not to whom does the money properly belong—to the estate of the insured or to the beneficiary? but, should the company be allowed to raise that point? The courts of numerous states have upheld either the complete validity of such a policy, or, at all events, its validity against the company, who will not be permitted to set up the beneficiary's want of insurable interest. In Campbell v. Ins. Co., 98 Mass. 381, where the policy was in favor of a sister-in-law, the court said:

"The policy in this case is upon the life of Andrew Campbell. It was made upon his application. It issued to him as 'the assured.' The premium was paid by him, and he thereby became a member of the defendant corporation. It is the interest of Andrew Campbell in his own life that supports the policy. The plaintiff did not, by virtue of the clause declaring the policy to be for her benefit, become the assured. She is merely the person designated by agreement of the parties to receive the proceeds of the policy upon the death of the assured. The contract (so long as it remains executory), the interest by which it is supported, and the relation of membership, all continue the same as if no such clause were inserted. It was not necessary, therefore, that the plaintiff should show that she had an interest in the life of Andrew Campbell, by which the policy could be supported as a policy to herself as the assured. The defendants raise no question as to her right to bring this action if the policy can be supported for her benefit."

In Provident Life Co. v. Baum, 29 Ind. 236, where the policy was in favor of a brother, the trial court ruled that it was wholly immaterial whether the beneficiary had any interest of a pecuniary nature in the life of the insured. This instruction was held to be correct, the Supreme Court saying:

"It cannot be questioned that a person has an insurable interest in his own life, and that he may effect such insurance and appoint any one to receive the money in case of his death during the existence of such a policy. It is not for the insurance company, after executing such a policy, and agreeing to the appointment so made, to question the right of such appointee to maintain the action."

A similar question was decided by the Supreme Court of Illinois in Benefit Ass'n v. Blue, 120 Ill. 121, 11 N. E. 331, 60 Am. Rep. 558. Blue was the beneficiary, and the association pleaded, in answer to his suit upon the policy, that he was not a creditor of the insured, had no pecuniary interest in his life, and no well-founded expectation of pecuniary advantage to be derived from his continuing to live. Upon demurrer, the plea was held to be insufficient, because the insured "had a clear right to procure a policy on his life, and, unless some principle of public policy is violated, he could make it payable in case of death to any person whom he might desire." In Heinlein v. Ins. Co., 101 Mich. 254, 59 N. W. 615, 25 L. R. A. 627, 45 Am. St. Rep. 409, the court refer with approval to section 112 of May on Insurance, in which the author states the law to be that, if the per-

son whose life is insured pays the premiums, there can be no doubt as to the validity of the policy, even if the beneficiary has no interest, since the insured's own interest supports the policy. The Supreme Court of Vermont has taken the same view of the question in Fairchild v. Life Ass'n, 51 Vt. 624. The plaintiff had no insurable interest in the life of the decedent, but this was held to be unimportant, as the policy had been taken out and maintained by the insured, although made payable to the plaintiff. The court quoted with approval from Provident Life Co. v. Baum, supra, and added, "Nor can the insurer set up as a defense to an action brought upon such a policy by or for the benefit of the beneficiary * * * a want of insurable interest in the plaintiff." The New York Court of Appeals is of the same opinion: "If the contract is with the party whose life is insured, he may make the loss payable to his own representatives, or to his assignee or appointee." Rawls v. Ins. Co., 27 N. Y. 282, 84 Am. Dec. 280. And in Connecticut, where a policy was payable to the insured's affianced wife, the court said:

"Surely [the deceased] had an insurable interest in his own life, and he obtained the insurance on it; and we know of no law to prevent him from making the policy payable, in case of his death, to the person to whom he was affianced." Lemon v. Ins. Co., 38 Conn. 294.

In Pennsylvania the dictum heretofore quoted from Scott v. Dickson has been twice repeated with approval (Hill v. United Ins. Ass'n, 154 Pa. 29, 25 Atl. 771, 35 Am. St. Rep. 807; Masonic Ass'n v. Jones, 154 Pa. 105, 26 Atl. 253), and in Overbeck v. Overbeck, 155 Pa. 5, 25 Atl. 646, the point was finally decided. In Texas, where the doctrine of insurable interest is peculiar, it nevertheless agrees in this respect with the decisions just referred to:

"If the company has issued a policy upon the life of a person, payable to one who has no insurable interest in the life insured, * * * the insurance company must, nevertheless, pay the full amount of the policy, if otherwise liable, because it has so contracted; and it is no concern of the insurer as to who gets the proceeds." Cheeves v. Anders, 87 Tex. 287, 28 S. W. 274, 47 Am. St. Rep. 107.

In other states the same opinion is held, as will be seen by referring to the cases collected in the notes to section 112 of May on Insurance (4th Ed.) and to 3 Amer. & Eng. Enc. of Law (2d Ed.) pp. 958, 959, and notes. The doctrine is an exception to the general rule that an insurable interest must exist in order to qualify one to be a beneficiary under a life policy, but, so far as I know, it is maintained in the state courts wherever the question has arisen.

In the federal courts, also, the same view is taken. It was said by Judge (now Mr. Justice) Brown, in Langdon v. Ins. Co. (C. C.) 14 Fed. 272:

"But there is no case, to my knowledge, which holds that a party may not insure his own life, and make the policy payable to any one he may select, though such person may have no legal interest in his life."

Accordingly he sustained a recovery on a policy made payable to a brother-in-law, with no insurable interest. This case was succeeded

by Lamont v. Grand Lodge (C. C.) 31 Fed. 177, in which Judge Shiras, of the Northern District of Iowa, takes a similar position:

"A person has an insurable interest in his own life, and a policy issued thereon is his property, and by will or any other proper mode he can designate the person to whom, at his death, the proceeds of the policy shall be paid; and the right of a person to thus provide for the future of another cannot be questioned. Public policy requires that a person having no insurable interest in the life of another shall not be permitted to speculate on such life, and thereby become interested in its early termination; but public policy does not forbid a person from in good faith making provision for the future of another in whom he may be interested, even though the latter may not have an insurable interest in his life. If this were not so, then a person would be debarred from giving a legacy or bequest by will to one who had not an insurable interest in his life, because thereby the legatee would become interested in his early death. To prevent the evils resulting from allowing persons having no interest in prolonging the life of another to speculate on such life, the rule is adopted that one having no insurable interest in the life of another shall not be permitted to contract, either directly or indirectly, for the payment of a sum upon the death of the other; but it has never been held that public policy forbids a person from insuring his own life, and by will or otherwise controlling the disposition of the proceeds of the policy. In such case the beneficiary has no part in the contract of insurance, and has no control over it."

A decision to the same effect is Ingersoll v. Knights of Golden Rule (C. C.) 47 Fed. 272, where insurance by the deceased on his own life for the benefit of a brother was said to be "clearly authorized." So, also, in Robinson v. United States Accident Ins. Society (C. C.) 68 Fed. 825, recovery was permitted upon an accident policy that was taken out for the benefit of a stranger, and several of the foregoing cases were referred to with approval. In the same volume, at page 873, 16 C. C. A, 51, is the report of Ins. Co. v. Barr, in which the Court of Appeals for the Eighth Circuit adopts the same view:

"The insurance was obtained by the deceased on his own life, obviously for his own benefit. He had the right to designate the person to whom the indemnity should be paid in case of an injury resulting in death, and, having done so, and the company having agreed to pay the indemnity to the person thus designated, it cannot now insist that such person shall prove an insurable interest in the life of the deceased as a condition precedent to recovery."

The precise question did not arise in Kentucky Ins. Co. v. Hamilton, 63 Fed. 93, 11 C. C. A. 42, a case before the Court of Appeals for the Sixth Circuit; but the disposition of the court can be readily detected, I think, from the discussion on pages 101 and 102. The most recent case in the federal courts of which I have knowledge is Fidelity Ass'n v. Jeffords, 107 Fed. 402, 46 C. C. A. 377, 53 L. R. A. 193, in which the Court of Appeals for the Fifth Circuit supported a policy taken out in favor of a brother, and went so far as to say that in such a case "it is immaterial what arrangement is made between them for the payment of the premiums."

In the face of these citations, it is impossible, I think, to give much weight to such general expressions to the contrary as may be found here and there among the earlier contributions to the discussion. They are all dicta, and whenever the question has come to be argued, considered, and decided, the decision has been without exception, so far as I know, in favor of the beneficiary. Swick v. Ins. Co., Fed. Cas. No. 13,692, which is sometimes cited as an opposing

decision, was a case where the policy was assigned, and therefore presents a different question, although the case does contain the dictum, that "no life policy is valid if taken for the benefit of a person who has no insurable interest in the risk." Moreover, if the question were of the first impression, I should incline to sustain the policy. In many instances a beneficiary does not know that the policy is in his favor, and where this is the fact no temptation from this source can arise to put an end to the life insured, nor does the beneficiary suffer any moral decadence because the passion of cupidity and of speculative gain has been aroused. But, obviously, the knowledge or ignorance of the beneficiary on this point could not be safely made the test of his interest; otherwise it would be in the power of any person to destroy his interest at any moment merely by communicating the fact that the policy was drawn in his favor. But the principal reason, as it seems to me, for holding such a policy to be unobjectionable, is the fact that the insured retains control of the contract. He pays the premiums year by year, or at the appointed time, and it is therefore in his power to bring the contract to an end whenever he may desire. If he permits the policy to lapse, he defeats at once the interest of the beneficiary, and he may do this at pleasure. For these reasons, and also in reliance on the unbroken line of the decisions, I am of opinion that an insurable interest was not necessary to enable the plaintiff to recover upon the policy in suit.

Nor is this conclusion affected by the further argument that, whatever the general rule of law may be, the policy in suit contains a provision under which the company may successfully set up the plaintiff's want of insurable interest. That provision is this: "All claims under this policy shall be subject to proof of interest." As it seems to me, the company is estopped from taking advantage of this provision. Whatever effect it may have in a case where the company has no knowledge of the lack of insurable interest upon the part of the beneficiary until after the death of the insured, it cannot be held to be available where such lack of interest was communicated to the company at the time the insurance was taken out, and where the company has received renewal premiums with continued knowledge of the fact. In such a case all the elements of estoppel by conduct are present. The company had timely knowledge of the fact of which it now desires to take advantage, but, without interposing any objection, either when the policy was issued, or afterwards as it came to be renewed, put the insured in a worse position by taking and retaining his money under the guise of a contract which it must have had no real intention to fulfill. The company was under a duty to speak if it meant to insist upon the provision, and therefore, having misled the insured by its silence, and by receiving his money, it must be held to have waived the proof of interest on the part of the beneficiary. To my mind it is so clear that the company is estopped from setting up this defense that further discussion of the subject seems to be unnecessary.

The defendant's motion for judgment notwithstanding the verdict is therefore refused. (Exception to defendant.)