# WILLIAM L. CHRISTENSON and Others v. MARY MADSON.[1]

October 30, 1914.

Nos. 18,736—(54).[2]

**Life insurance — recovery by beneficiary — matters of defense.**

1. Where a person procures insurance upon the life of another, it is the general rule that he must prove an insurable interest in such life in order to recover upon such policy; but, where a person insures his own life and appoints another to receive the proceeds of such insurance, the appointee establishes a *prima facie* right to recover by proving the contract of insurance and the happening of the event upon which it is to become payable. If facts exist which preclude such recovery they are matters of defense.

**Mutual benefit insurance — who may be beneficiaries.**

2. The classes of persons eligible as beneficiaries under policies issued by a fraternal association are to be determined by the rules adopted for the express purpose of governing such matters, and not by general statements made for the purpose of indicating the general object of such association, and restrictions limiting the classes who may be so designated must be expressed in positive terms and cannot be inferred from general statements.

**Construction of by-laws.**

3. The by-laws of the association having provided that policies may be made payable to the affianced wife of the insured, a policy so payable is valid, although the object of the association, as stated in its constitution, is to provide insurance for the surviving relatives of its members.

**Evidence.**

4. Under the evidence in this case, the court did not err in refusing to find that immoral relations existed between the insured and his beneficiary.

Action in the district court for Hennepin county by the children and sole heirs of James P. Christenson, deceased, against Mary Madson, substituted by order of court for Danish Brotherhood in

---

[1] Reported in 149 N. W. 288.      [2] October, 1914, term calendar.

Note.—Validity of life insurance for benefit of betrothed wife, see note in 19 L.R.A. 187.

Insurable interest of woman in life of intended husband, see note in 53 L.R.A. 825.

127 M.—15.

America, to recover $1,000 upon its certificate upon the life of James P. Christenson. The case was tried before Jelley, J., who made findings and ordered judgment in favor of defendant. From an order denying their motion for a new trial, plaintiffs appealed. Affirmed.

*Jay W. Crane,* for appellants.

*Grotte & Bowen,* for respondent.

TAYLOR, C.

On June 7, 1909, James P. Christenson procured the Danish Brotherhood in America, of which he was a member, to issue to him a benefit certificate for $1,000 payable, upon his death, to defendant, Mary Madson, as his betrothed. He paid all the assessments upon the certificate until his death which occurred in December, 1912. In October, 1911, he delivered the certificate to Mary Madson, the beneficiary therein named, who has ever since retained it, but he was never married to her. He had been previously married and had grown-up children, but his wife had procured a divorce from him on April 5, 1909. After his death, his children brought this suit against the brotherhood to recover the amount of the certificate. The brotherhood admitted liability under the certificate, paid the money into court, and caused Mary Madson to be substituted as defendant.

The suit proceeded to trial between the children as plaintiffs and Mary Madson as defendant, and she will be referred to as defendant hereafter. The case was tried by the court without a jury. The court, among other things, found that defendant was the affianced wife of James P. Christenson; that both the law and the rules of the order authorized the issuance of benefit certificates payable to the affianced wife of the insured; and that the certificate in controversy was, by its terms, payable to defendant as such affianced wife. The court thereupon directed that judgment be entered to the effect that defendant was entitled to the proceeds of the certificate, and that the money paid into court be delivered to her. Plaintiffs appealed from an order denying their motion for a new trial.

1. Plaintiffs insist that the evidence is not sufficient to sustain the finding that defendant was betrothed to Christenson. His death

debarred her, a party in interest, from testifying as to conversations between them, and the only evidence to support the finding is the fact that the certificate, by his direction, was made payable to her as his betrothed. Plaintiffs invoke the rule, frequently stated in the books, that the beneficiary under a policy of life insurance, in order to recover thereon, must allege and prove an insurable interest in the life of the insured. This rule is based upon the theory that a policy, issued to one who has no interest in the continuation of the life of the person insured, is both a gambling contract, and a contract which creates a motive for desiring the termination of such life, and is therefore against public policy and void. The rule is applied very generally where the insurance is procured by the beneficiary and the suit is consequently founded upon a contract between the beneficiary and the insurer; but where the insured himself procures the insurance, the contract is between him and the insurer, not between the beneficiary and the insurer, and his interest in his own life sustains the policy and need not be proven. In such case he has the right to appoint the person to whom the proceeds of the policy shall go, and, if he make such appointment, the one so appointed takes by virtue of the contract between the insured and the insurer, not by virtue of a contract between the insurer and the appointee, and in order to recover thereon it is sufficient for the appointee to prove the contract and the happening of the event which entitles him to the benefit thereof. If there be facts which preclude the appointee from recovering, they should be alleged and proven as a defense. In other words, if the insured himself procured the issuance of the policy and caused the beneficiary to be named therein, the policy is *prima facie* evidence that the beneficiary so named is entitled to the proceeds thereof at the death of the insured; but, if the insured did not procure the issuance of the policy, the beneficiary thereunder must allege and prove the facts entitling him to receive such proceeds. In Campbell v. New England Mut. Life Ins. Co. 98 Mass. 381, the court say:

"The policy in this case is upon the life of Andrew Campbell. It was made upon his application; it issued to him as 'the assured;' the premium was paid by him; and he thereby became a member of the

defendant corporation. It is the interest of Andrew Campbell in his own life that supports the policy. The plaintiff did not, by virtue of the clause declaring the policy to be for her benefit, become the assured. She is merely the person designated by the agreement of the parties to receive the proceeds of the policy upon the death of the assured. The contract (so long as it remains executory), the interest by which it is supported, and the relation of membership, all continue the same as if no such clause were inserted. Fogg v. Middlesex Ins. Co. 10 Cush. 337, 346; Sandford v. Mechanics' Ins. Co. 12 Cush. 541; Hale v. Mechanics' Ins. Co. 6 Gray, 169 [66 Am. Dec. 410]; Campbell v. Charter Oak Ins. Co. 10 Allen, 213; Forbes v. American Ins. Co. 15 Gray, 249 [77 Am. Dec. 360]. It was not necessary, therefore, that the plaintiff should show that she had an interest in the life of Andrew Campbell, by which the policy could be supported as a policy to herself as the assured." The same rule is recognized by other courts. Ætna Life Ins. Co. v. France, 94 U. S. 561, 24 L. ed. 287; Provident Life Ins. & Inv. Co. v. Baum, 29 Ind. 236; Milner v. Bowman, 119 Ind. 448, 21 N. E. 1094, 5 L.R.A. 95; Prudential Ins. Co. v. Hunn, 21 Ind. App. 525, 52 N. E. 772, 69 Am. St. 380; Union Fraternal League v. Walton, 109 Ga. 1, 34 S. E. 317, 46 L.R.A. 424, 77 Am. St. 350; Foresters of America v. Hollis, 70 Kan. 71, 78 Pac. 160, 3 Ann. Cas. 535; Guardian Mut. Life Ins. Co. v. Hogan, 80 Ill. 35, 22 Am. Rep. 180; Massachusetts Mut. Life Ins. Co. v. Kellogg, 82 Ill. 614; Scott v. Dickson, 108 Pa. St. 6, 56 Am. Rep. 192; Hill v. United Life Ins. Assn. 154 Pa. St. 29, 25 Atl. 771, 35 Am. St. 807; Brennan v. Prudential Ins. Co. 148 Pa. St. 199, 23 Atl. 901; Heinlein v. Imperial Life Ins. Co. 101 Mich. 250, 59 N. W. 615, 25 L.R.A. 627, 45 Am. St. 409; Fairchild v. Northeastern Mut. Life Assn. 51 Vt. 613; Bursinger v. Bank of Watertown, 67 Wis. 75, 30 N. W. 290, 58 Am. Rep. 848; Dolan v. Supreme Council, 152 Mich. 266, 16 L.R.A.(N.S.) 555, 15 Ann. Cas. 232, and note appended thereto.

2. Plaintiffs contend that defendant entered into meretricious relations with Christenson and by so doing terminated the betrothal. There is no finding that any improper relations existed between them. Plaintiffs made a motion to amend the findings by inserting

therein a statement that defendant became the mistress of Christenson. The court denied this application, and, under the evidence, it cannot be held that the court erred in so doing. As the existence of the alleged improper relations has not been established, it is not necessary to determine whether the marriage engagement would be broken by subsequent cohabitation without being married.

3. Plaintiffs further claim that the constitution of the Danish Brotherhood in America excludes the betrothed of the insured from the class of persons to whom benefit certificates may be made payable. The brotherhood is incorporated under the laws of the state of Nebraska. The certificate in question was issued in the state of Minnesota to a citizen of Minnesota. The laws of both Nebraska and Minnesota provide that such certificates may be made payable to the affianced wife of the insured; and the by-laws of the Danish Brotherhood contain a like provision. But plaintiffs contend that this provision of the by-laws violates the constitution of the brotherhood and is void. The provisions of the constitution upon which plaintiffs rely are the following:

"Sec. 2. The object of the Danish Brotherhood is to work toward a union among the Danes in America; to perpetuate the memories from Denmark and to strengthen each other in true brotherhood; to help one another by financial aid to sick and needy members; to help unemployed brothers to employment, and to provide for an insurance and guarantee fund, whereby every brother will have a guaranty that his surviving relatives, in case of his death, will receive a sum as stipulated by law, and to aid the local lodges, in cases where long continued sickness or some accident makes extra assistance necessary.

"Sec. 5. In case of the death of a brother, the brotherhood, according to the constitution and by-laws, shall provide for the payment to his surviving relatives of such sum as is described in his certificate of membership, and which, according to the constitution and by-laws, is his rightful due, either $250, $500 or $1,000, according to the scale after which he has paid, while the assessment, which every member must pay to this object, must not exceed the provisions described in the by-laws."

These sections of the constitution merely give a general outline of the purpose of the brotherhood. They contain no prohibitory or restrictive language, and were not intended to mark out and limit, except in a general way, the nature and extent of the power to make contracts.

To determine whether a certain person may lawfully be appointed as beneficiary, we must look to the rules and regulations adopted for the purpose of pointing out and defining who may, and who may not, become such beneficiaries. Such questions are to be determined by the provisions established for the express purpose of governing such matters, and not by the general phrases used in setting forth the general purpose of the association. This is true although the specific regulations are found in the by-laws and the general language in the constitution. Of course mandatory provisions in the constitution, and prohibitions and limitations therein must be observed; but the statement of the purpose of the organization, couched in general terms, is not ordinarily intended to restrict and define with exactness the powers of the association. The restrictions and limitations upon the powers of the association are usually contained in provisions, either in the constitution or the by-laws, adopted for the express purpose of outlining, limiting and defining such powers; and whether the association has power to make a particular contract is ordinarily to be determined by reference to such specific regulations, and not by reference to the general language used to express the general object for which the association was formed. Vanasek v. Western Bohemian Fraternal Assn. 122 Minn. 273, 142 N. W. 334, 49 L.R.A.(N.S.) 141; Walter v. Hensel, 42 Minn. 204, 44 N. W. 57.

It is also the general rule that restrictions limiting the classes who may be designated as beneficiaries must be expressed in specific and positive terms, and cannot be inferred from general statements contained in either the constitution or by-laws. Pleasants v. Locomotive Engineers Mut. Life & Accident Ins. Assn. 70 W. Va. 389, 73 N. E. 976, Ann. Cas. 1913E, 490, and cases cited in note appended thereto.

The constitution of the Danish Brotherhood contemplates the

existence of appropriate by-laws. The by-law in question expressly provides that the insured may make his benefit certificate payable to his fiancée. There is no other specific provision in respect to this matter; and, as the constitution contains no prohibitory or restrictive language, the phrase, "surviving relatives," used in stating the general object of the brotherhood, cannot be construed as invalidating such by-laws or forbidding the insured to make his certificate payable to his affianced wife.

Order affirmed.