**CASABLANCA CONCERTS, INC., etc., et al., Appellants,**

v.

**AMERICAN NATIONAL GENERAL AGENCIES, INC., et al., Writers, Inc., Respondents.**

**No. C1-86-2000.**

Court of Appeals of Minnesota.

June 9, 1987.

Review Denied Aug. 12, 1987.

Joseph H. Belzer, Daniel A. Davis & Associates, Minneapolis, for appellants.

David G. Martin, Michael R. Docherty, Doherty, Rumble & Butler, St. Paul, for American National General Agencies, Inc., et al.

Marie A. Darst, Donald Jardine, Jardine, Logan & O'Brien, St. Paul, for Writers, Inc.

Heard, considered, and decided by CRIPPEN, P.J., and WOZNIAK and MULALLY *, JJ.

## OPINION

WOZNIAK, Judge.

Casablanca Concerts, Inc. appeals from summary judgment in which the trial court held as a matter of law that appellant's claimed contract of insurance with respondents was void as a wagering contract. We reverse and remand.

## FACTS

Casablanca was the promoter of an outdoor concert featuring the Eagles held at the Metropolitan Stadium on August 1, 1978. Before the concert, Casablanca requested respondent Writers, Inc. to secure $150,000 "event" valued form rain insurance to insure the concert against rain in excess of .10 inch during the performance. Writers secured one policy for $30,000 from St. Paul Companies (not a party to this action), and two policies for $60,000 each from Lloyd's through respondents American National General Agencies, Inc.

The St. Paul valued form policy provided that, if the specified amount of rain fell during the concert, appellant would be paid the face value of the policy without requiring the concert to be canceled, abandoned, or postponed. The American National policies were also valued form policies, but they conditioned payment upon the cancellation, abandonment, or postponement of the concert. A valued form policy commands a higher premium which was quoted and paid on both the St. Paul and American National policies.

During the concert, between 8:00 and 11:00 p.m., over one-tenth of one inch of rain fell at the concert site. Appellant did not cancel, abandon, or postpone the event. No refund was issued to ticket holders. Casablanca then submitted claims for the proceeds of the policies. St. Paul paid its policy in full.

American National denied Casablanca's claim, stating that the policies permitted recovery only if the concert was canceled, abandoned, or postponed. Casablanca then commenced this action seeking the proceeds of the American National policies, alleging that Writers failed to order the proper coverage or that American National failed to issue the proper coverage. Casablanca claimed that the valued form policies should not have required cancellation of the event. Writers agreed that the policies as issued were *not* the policies ordered by appellant, and cross-claimed against American National, seeking indemnity.

American National denied that Casablanca ordered insurance which would pay the face value regardless of cancellation, abandonment, or postponement of the concert, and moved for summary judgment, claiming that (1) even if appellant had ordered this type of coverage, the policies would be wagering contracts and therefore void as against public policy; and (2) appellant was not entitled to the face value of the policies because it had not sustained a total loss. Casablanca cross-moved for summary judgment. The trial court granted respondents' motion for summary judgment and denied appellant's cross-motion for summary judgment.

## ISSUES

1. Did the trial err in granting summary judgment to respondents?

(a) Was the insurance contract valid?

(b) Did Casablanca suffer a total loss under the terms of the policy?

2. Can Casablanca recover on a partial loss basis?

3. If the trial court finds the contract illegal, may appellant recover its premium?

4. Is appellant entitled to summary judgment?

## ANALYSIS

On appeal from summary judgment, we view the evidence in the light most favorable to the party against whom the motion was granted. *Abdallah, Inc. v. Martin,* 242 Minn. 416, 424, 65 N.W.2d 641, 646

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

(1954). The parties agree that if the insurance issued by respondents did conform to appellant's order, then appellant cannot recover as a matter of law, since the concert was held as scheduled. For the purposes of this appeal, however, we must assume that appellant ordered the type of insurance which would pay the face value of the policy if it rained the requisite amount at the concert site, without cancellation, postponement, or abandonment of the concert.

### 1. (a) *Validity of the Contract*

■ Respondents argue that summary judgment was proper because appellant does not have a valid insurance contract. First, they argue that appellant had no insurable interest. Before an insured can recover for a loss, it must have an insurable interest in the property covered by the policy.

■ An insurable interest exists where the insured can suffer a loss if the subject property is damaged. *Northwestern National Bank of Minneapolis v. Maher*, 258 N.W.2d 623, 624 (Minn.1977). The insured need not have an absolute right to the property, nor need he have title to, a lien upon, or possession of the property. *Antell v. Pearl Assurance Co.*, 252 Minn. 118, 124–26, 89 N.W.2d 726, 731–33 (1958).

Here, the insurable interest was increased expenses and intangible losses incurred as a result of the rainfall. Affidavits indicated that holding a concert in the rain increased expenses, damaged goodwill, decreased popularity of outdoor concerts, and caused a decline in future ticket sales and acceptance of outdoor concerts.

■ Accordingly, we hold that appellant had an insurable interest in profits derived from the concert without the requirement that the concert be canceled, abandoned, or postponed. *See National Filtering Oil Co. v. Citizen's Insurance Co.*, 106 N.Y. 535, 540–41, 13 N.E. 337, 338–39 (1887) (diminution of profits constitutes an insurable interest).

■ Secondly, respondent argues that even if appellant had an insurable interest, the policy insuring that interest was gross-ly overvalued and therefore void as a wagering contract. Since the policy would pay merely if it rained without requiring the event to be canceled, postponed, or abandoned, respondents argue the purpose of the agreement would not be to indemnify against loss. The valued form policy has been explained as follows:

> The law does not seek to evaluate the extent of the insurable interest. It therefore is immaterial that the interest of the insured is overvalued as long as the actual interest is substantial in relation to the amount of the insurance.

> A valued policy is not rendered a wagering contract merely because the value placed on the property is greater than the actual value, although recovery will be limited to the extent of the actual interest.

\* \* \* \* \* \*

> When the interest of the insured is grossly disproportionate to the amount of the insurance, it is held, however, that the policy is a wagering policy.

3 G. Couch, *Cyclopedia of Insurance Law* § 24.2, at 14 (2d ed. 1984) (footnotes omitted). Thus, if the face value of the policy is grossly disproportionate to appellant's insurable interest, the contract is void as a wagering contract. This determination is a question of fact for the trial court.

### (b) *Total Loss*

Respondents next contend that appellant did not sustain a total loss, and thus is not entitled to the proceeds of the valued policy. Appleman's *Insurance Law and Practice* defines a "valued" insurance policy as follows:

> A valued policy is one in which the measure of the value of the property insured is agreed upon by both parties to the contract, so that in case of a total loss it is not necessary to prove the actual value. Indeed, it has been stated that it is the uncertainty of the amount which distinguishes an open from a valued policy. Such a valuation is in the nature of a contract for liquidated damages.

\* \* \* \* \* \*

[T]he valuation is conclusive only in cases of a total loss, and where the loss is partial, the actual damage is the measure of recovery.

6 J. Appleman, *Insurance Law and Practice*, §§ 3827, 3828, at 245, 254 (1972) (footnotes omitted). The Minnesota valued fire insurance statute also requires a total loss before recovery of the face value of the policy. *See* Minn.Stat. § 65A.08, subd. 2 (1978).

Respondents claim that appellant did not sustain a total loss because the concert was not canceled, postponed, or abandoned. This argument, however, assumes that the risk insured against was the cost of cancellation, postponement, or abandonment of the event. Appellant, on the other hand, argues that the risk insured against was not the risk of losses due to cancellation of the event, but rather, the risk of decreased profit caused by the rainfall *without* cancellation of the concert. Appellant argues that if it had wanted to insure against cancellation of the event, it would have insured the concert for much more than $150,000, claiming that its estimated expenses for the entire concert were $560,-000. Therefore, the loss should not be judged by cancellation of the concert, but rather, by diminution of the profits caused by the rain.

Respondents argue that it cannot be assumed that Casablanca suffered a total loss merely because it rained more than one-tenth of one inch, and argue that Casablanca must prove its actual loss. At the hearing, appellant submitted an affidavit from Henry L. Fox, a weather insurer, in which Fox stated that valued rain insurance policies are written to allow payment without cancellation, postponement, or abandonment of the event to avoid any dispute as to the need for cancellation, and that rain creates intangible damages which are difficult, if not impossible, to prove after the fact. Thus, due to the nature of this loss, the parties before the fact agree on the value of loss, both tangible and intangible, which will result if the stated risk occurs. Accordingly, appellant argues that the parties agreed upon the valuation of the increased costs due to rain—$150,-000, and therefore, under Minnesota law, they need not prove the actual value of these expenses.

■ In construing the fire insurance statutes, Minnesota courts have long held that the basic principle of the valued policy is that the parties to the contract agree in advance on a valuation of the property to be insured and, in the absence of fraud, this valuation is binding and not subject to judicial inquiry. *Antell*, 252 Minn. at 132, 89 N.W.2d at 736; *see Brooks Realty Inc. v. Aetna Insurance Co.*, 276 Minn. 245, 252, 149 N.W.2d 494, 499 (1967); *Board of Trustees of First Congregational Church of Austin v. Cream City Mutual Insurance Company of Milwaukee*, 255 Minn. 347, 352, 96 N.W.2d 690, 695 (1959). We think that this rule must be applied in the context of rain insurance as well. Appellant must, however, prove that it did in fact sustain the losses against which it insured the concert. Respondents then have the burden of proving that appellant grossly overvalued its interest, thereby rendering the policy a wagering contract. *See In re Estate of Peterson*, 203 Minn. 491, 493, 281 N.W. 877, 878 (1938).

Respondents argue further that allowing appellant to recover without proof of the actual value of its loss would result in a windfall to appellant and defeat the underlying purpose of insurance—indemnification. The very nature of valued policies, however, represents a deviation from the principle of indemnity because the stipulated value may not equal the actual value of the property. *See* R. Keeton, *Basic Text on Insurance Law*, § 3.8, at 140 (1971). Valued policy legislation came into effect to halt the process whereby agents sold too much insurance to the insured and then, when loss occurred, relied on a provision in the contract which limited proceeds to the actual loss sustained. By forcing insurance companies to pay the full amount of the policy in the event of a total loss, it was expected that insurers would be more prudent in establishing insurable value, thereby preventing the double evil of overinsurance. Williams, *The Valued Policy and*

*Value Determination,* 1961 Ins.L.J. 71, 72; *see Antell,* 252 Minn. at 132–33, 89 N.W.2d at 737 (court assumes, from issuance of valued insurance policy, that insurer has made sufficient inspection of property to value property accurately).

Allowing appellant to recover the face value of the policy is also consistent with the doctrine of reasonable expectations recently adopted by the Minnesota Supreme Court, in part, to encourage insurance companies to conspicuously and concisely communicate the parameters of policy coverage. *See Atwater Creamery Co. v. Western National Mutual Insurance Co.,* 366 N.W.2d 271, 278 (Minn.1985); *see also* Comment, *Great Expectations for the Reasonable Expectations Doctrine,* 12 Wm. Mitchell L.Rev. 371 (1986).

2. *Partial Loss/Recovery of Premium*

Appellant argues that in the event it is determined that it has not sustained a total loss, it should be permitted to recover on a partial loss basis, and further, if the contracts are illegal as gambling contracts, it should be permitted to recover the premiums paid. Respondents argue that appellant did not seek this recovery in its pleadings and raises these issues for the first time on appeal, thereby waiving these issues.

■ Appellant's complaint gave respondents sufficient notice of its claims for actual partial loss and recovery of the premium since its claim was pleaded in terms of facts, thus allowing appellant to advance any legal theory supported by those facts. *Siats v. Western Union Telegraph Co.,* 251 Minn. 412, 415–16, 88 N.W.2d 199, 202 (1958). Moreover, actual partial loss was addressed by the trial court in its memorandum, and appellant argued the issue of actual loss to the trial court and submitted an affidavit asserting that appellant incurred an actual loss. Therefore, appellant has not waived these issues.

■ Appellant does not claim that it ordered insurance which provided for recovery of its actual loss in the event of partial loss, nor is there a governing statute. In fire insurance cases, valued form insurance permits recovery of the actual loss sustained in cases of partial loss. *See Brooks Realty,* 276 Minn. 245, 252, 149 N.W.2d 494, 499. We think that the rationale permitting recovery for a partial loss in the context of fire insurance applies to rain insurance as well. In this case, the risk insured against was increased expenses caused by a determined amount of rain without cancellation of the concert. The requisite amount of rain fell. A net profit from the concert does not preclude a finding of loss since increased expenses decrease its net profit. None of the policies defines loss and the policies must be construed in favor of the insured. If the jury finds that appellant did not sustain its total anticipated losses, it can recover for its actual loss.

3. *Illegality*

■ If the trial court finds that the face value of the policies, $150,000, is grossly disproportionate to appellant's insurable interest, then the contract is a wagering contract. If appellant can show that it valued its interest in good faith, however, then appellant should be allowed to recover the premium paid for the insurance. *See Commonwealth Life Insurance Co. v. George,* 248 Ala. 649, 28 So.2d 910, 916 (1947); *Washington v. Atlanta Life Insurance Co.,* 175 Tenn. 529, 533, 136 S.W.2d 493, 494 (1940); R. Keeton, *supra,* § 3.3(d), at 109–10.

4. *Summary Judgment for Appellant*

■ Appellant is not entitled to summary judgment in its favor as there are material issues of fact regarding the issuance of the valued policies and the value of appellant's insurable interest.

**DECISION**

The trial court erred in granting summary judgment in favor of respondents. The case is remanded to allow appellant to show that it ordered insurance which would pay the face value of the policy regardless of cancellation of the event. Respondent then has the burden of proving that the

anticipated loss was disproportionate to the insurance requested, rendering the policy a wagering contract. If the contract is found to be illegal, appellant should be permitted to show that it had a bona fide belief that the insurance was valid, and thereby recover its premium. If the contract of insurance is valid, then appellant may recover the face value of the policy unless the jury determines that appellant suffered only a partial loss, entitling appellant to recover only the actual value of its loss.

Reversed and remanded.

MULALLY, Judge (dissenting):

I respectfully dissent. This matter involves a dispute over two policies of rain insurance. Appellants promoted an outdoor concert. They insured themselves against loss in the event the concert was cancelled, postponed, or abandoned in consequence of rainfall in an amount in excess of .10 inches. The policies were "valued form" policies in a total amount of $120,000.00.

Tickets were sold, the concert was held, it rained in excess of .10 inches, but the concert was fully performed. It was not cancelled, postponed, or abandoned.

Appellants made claim to respondents for the entire value of the policies. Respondents refused payment on the basis that its policy language required as a condition precedent to recovery that the concert be cancelled, postponed, or abandoned due to rain.

Appellants then brought this action against respondents, alleging that they had requested a rain insurance policy that would pay *regardless of any loss to the insured* if the requisite amount of rain fell. Appellants contend that the policies as issued, requiring cancellation, postponement, or abandonment, did not conform to their order and should be reformed to provide for payment regardless of loss. Both appellants and respondents agreed that there were no material fact issues in dispute, since both parties moved for summary judgment. The trial court found that, as a matter of law, appellants could not recover under either the policies that were issued or the policies which appellants contend they sought, and the trial court granted summary judgment to respondents.

As pointed out by respondents, while appellants' contentions create a factual dispute as to which form of policy should have been issued, there are no *material* fact issues, and summary judgment was properly granted to respondents because, as found by the trial court as a matter of law, appellants were not entitled to recover under either the policy form as issued, or the policy form appellants contend that they requested.

Insurance contracts are contracts of indemnity intended to indemnify the insured against *loss* sustained by reason of the occurrence of some disaster. These policies were not contracts to insure against rain; they were to insure against *loss* in the event the concert was *cancelled, postponed, or abandoned,* solely and directly in consequence of rainfall in excess of .10 inches.

There is no dispute but that it rained in excess of .10 inches during the concert. There is no dispute but that the concert continued and was fully performed. It was not cancelled, postponed, or abandoned as a result of the rain. Under the terms of the policy as purchased and issued, appellants sustained no loss.

The policies do not indemnify appellants against *all* losses caused by rain; only against losses caused by cancellation, postponement, or abandonment, none of which occurred. There may be policies of insurance that indemnify an insured against the types of partial loss which appellants now contend they sustained, and which the majority finds create issues of material fact; but that is neither the type of policy appellants claim to have sought nor the type they actually purchased. Appellants cannot recover totally or partially under the terms of either the policies that were issued, or those which they claim they requested.

The form of policy that appellants *contend* they requested (i.e. full payment of

the stated amounts without regard to actual loss if it rained) cannot exist in Minnesota. Appellants had no insurable interest in the limited concept of whether or not it rained. The insurable interest they had was in the concert and any *loss* they directly sustained by reason of the concert's cancellation, postponement, or abandonment because of the requisite rain. *See Nathan v. St. Paul Mutual Insurance Co.,* 243 Minn. 430, 440, 68 N.W.2d 385, 392 (1955).

Such a policy as appellants contend they sought is merely a wagering contract. It would be contrary to public policy, and appellants could not recover under such a policy. *Christenson v. Madson,* 127 Minn. 225, 227, 149 N.W. 288, 289 (1914); *see* 3 G. Couch, Cyclopedia of Insurance Law § 24:1, at 6–11 (2d ed. 1984).

> [I]t is now almost universally held * * * that an insurable interest is necessary to the validity of a policy, no matter what may be the subject matter, and that if no insurable interest exists, the contract is void. Stated differently, wagering contracts, no matter what may be the subject matter of the insurance, are void and unenforceable.

*Id.* at 8–11 (footnotes omitted).

In this court, appellants for the first time have alleged damages based on additional expenses and/or certain intangible losses which they contend resulted from holding the concert in the rain. Also, for the first time appellants seek recovery of the premiums paid in the event the policy that they contend should have been issued is determined to be a wagering contract. Neither issue was asserted nor litigated in the trial court and should not be considered here.

I would affirm the decision of the trial court.