The National Filtering Oil Company, Respondent, *v.* The Citizens' Insurance Company of Missouri, Appellant.

A policy of insurance, executed by defendant to plaintiff, recited that E. & Co., "by virtue of an agreement with the assured, are bound to pay to them royalties for the privilege of using their patents, which royalties are guaranteed to amount to $250 a month." It was covenanted in and by the policy that, in case the premises occupied by E. & Co. should be damaged by fire, "so as to cause a diminution of said royalties," defendant would pay "the amount of such diminution, during the restoration of said premises to their producing capacity, immediately preceding said fire." *Held,* that the insurance was not limited to the guaranteed minimum, but covered all the royalties, payable by E. & Co. under their contract; that, as so construed, the policy was not void as a wager policy; that while, beyond the amount guaranteed, the royalties were contingent, as E. & Co. could limit their production so that it yield no royalties beyond that amount, yet, as it appeared that their license from plaintiff was an exclusive one, and as, therefore, if their business was lessened or restricted because of a fire, plaintiff could not license others, but must bear the loss of the diminished royalties, against that risk, which was necessarily connected with the premises, it was lawful to insure.

An interest, legal or equitable, in property, is not necessary to support an insurance upon it; it is sufficient if the assured is so situated as to be liable to loss if the property be destroyed by the peril insured against.

Also *held,* that it was competent to give in evidence the contract between plaintiff and E. & Co.

Also *held,* that the recovery could not be limited to loss of royalties on the oil actually burned, as the principal loss arose from the enforced idleness of the works; and that it was competent on the question of

damages to prove the royalties paid for two months immediately pre-
ceding the fire, and those paid during the restoration of the works, and
for some months thereafter.

(Argued June 14, 1887; decided October 4, 1887.)

APPEAL from judgment of the General Term of the Supreme
Court, in the first judicial department, entered upon an order
made January 16, 1887, which affirmed a judgment in favor
of plaintiff entered upon a decision of the court on trial with-
out a jury.

The action was upon a policy of fire insurance, the substance
of which and the material facts are stated in the opinion.

*G. A. Clement* for appellant. The written agreement
between Ellis & Co., and the plaintiff and the policy should
not be considered together as one instrument. The defend-
ant is not bound by the terms of a written contract which
it had never seen, and to which it was not a party. (Wood
on Ins. § 41; May on Ins. §§ 3, 31; *In re Com'rs*, 52 N. Y.
131; *Wilson* v. *Randall*, 67 id. 338, 341; *Knowles* v. *Loone*,
96 id. 534, 536; *King* v. *Leighton*, 100 id. 386, 391; *Chadsey*
v. *Guion*, 97 id. 339; *Holmes* v. *Hubbard*, 60 id. 183, 185,
186; *Clarke* v. *Dillon*, 97 id., 373.) An insurable interest
must not only exist when a policy of insurance is issued, but
its existence is equally necessary at the time of the fire.
(*Fowler* v. *N. Y. Ind. Co.*, 26 N. Y. 422; reversing 23 Barb.
143; *Williams* v. *Ins. Co. N. A.*, 9 How. 365; *Freeman* v.
*Fulton Ins. Co.*, 38 Barb. 247; *Tallman* v. *Atl. Ins. Co.*, 29
How. 71, 86; *Quarrier* v. *Peab. Ins. Co.*, 10 W. Va. 507;
*Royal Ins. Co.* v. *Horton*, 14 Ins. L. J. 871; Wood on Ins.
§ 251; *Rohrbach* v. *Germ. Ins. Co.*, 62 N. Y. 47, 54; *Har-
vey* v. *Cherry*, 76 id. 440.) The extent of plaintiff's legal
insurable interest was governed or limited by the amount of
oil destroyed. (May on Ins. § 2; Wood on Ins. §§ 248, 258,
259; 1 Phillips on Ins. § 183; Marshall on Ins. 106; Arnold
on Ins. 247; *Warren* v. *Davenport Ins. Co.*, 31 Ia. 465, 468;
*Stockdale* v. *Dunlop*, 6 M. & W. 224; *Com. Ins. Co.* v. *Cap.
City Ins. Co.*, 16 Ins. L. J. 81; *Abbott* v. *Sebor*, 3 Johns. Cas.

39, 44, 97, 104.)   To sustain an insurable interest, there should be some direct pecuniary interest in the building, or other subject-matter of the insurance which may be damaged or lost by the fire. (*Mut. L. Ins. Co.* v. *Wagner*, 15 Ins. L. J. 704.) The court below erred in adopting the mode of computation and comparison and guess-work proposed by the plaintiff, extending over a period of six months, as it must have necessarily included elements of danger or loss in part, at least, caused by the uncertain and irregular demands of trade, and what would have been the necessary consequences of a stoppage of the works from other causes, than by the fire. (*Searles* v. *Man. R. R. Co.*, 101 N. Y. 661; 2 Cent. Rep. 442.)   The arbitrary finding of amount and the decision of the General Term in regard thereto are opposed to settled legal principles. (*Ins. Co.* v. *Boone*, 95 U. S. 117, 130, 133; *Leutze* v. *Chateau*, 42 Penn. 435; *Masterson* v. *Mt. Vernon*, 58 N. Y. 396; *Cassidy* v. *Le Fevre*, 45 id. 562.)

*F. R. Coudert* and *Paul Fuller* for respondent.   Plaintiff's right to royalties gave it an insurable interest in the premises of Ellis & Co. (2 R. S. [6th ed.] 653; *Gillett* v. *Bate*, 86 N. Y. 92; *S. F. & M. Ins. Co.* v. *Allen*, 43 id. 389, 395, 396; *Rohrback* v. *Germ. Ins. Co.*, 62 id. 57; *Lucena* v. *Crawford*, 1 B. & P. N. R. 269; Arnould on Ins. 229.)   There is no ground in law, or in the facts for the appellant's contention that the policy in question was a mere wager policy. (*Valton* v. *Nat. L. & F. L. Ass. Soc.*, 22 Barb. 35; 20 N. Y. 36; *Goodwin* v. *Mass. Mut. L. Ins. Co.*, 73 id. 496; *Abbott* v. *Sebor*, 3 Johns. Cas. 44; *Miller* v. *Eagle L. & Health Ins. Co.*, 2 E. D. S. 290; *S. C.*, 3 id. 291; 1 R. S. 662; 1 Phillips on Ins. 6 [3d ed.] chap. 1, § 2, subd. 7.)   The appellant having made the contract of insurance, issued its policy thereon, and received the stipulated premiums as fixed by itself for two successive years, or terms, is estopped thereby from now questioning the validity of the contract. (2 Par. on Cont. 793, chap. 4, § 4; *Isham* v. *Buckinham*, 49 N. Y. 222, 223.)   The contention of the appellant that by a proper construction of

the policy, the subject-matter of the insurance was, in any event, only the guaranteed royalties, of $250 per month, and that, con-sequently, the appellant only insured or guaranteed the pecu-niary 69 responsibility of Ellis & Co. to that amount, is untena-ble. (2 R. S. [6th ed.] 653 ; *Harper* v. *A. Mut. Ins. Co.*, 17 N. Y. 198 ; 1 Duer on Ins. 161 ; *Rolker* v. *Gt. West. Ins. Co.*, 4 Abb. Dec. Ct. App. 76, 82 ; *Herrman* v. *Merch. Ins. Co.*, 81 N. Y. 184, 187, 188 ; *Dilleber* v. *Home L. Ins. Co.*, id. 263.)

FINCH, J.   The insurance which forms the subject of this litigation was of an unusual character, and presents a question for the solution of which we have no admitted precedent. It was an insurance upon the oil reducing and filtering works of Ellis & Co., and for the protection of specified royalties, payable by that firm to the plaintiff as compensation for an exclusive license to use in their business a certain patent which belonged to and was controlled by the plaintiff company. The policy, by its terms, insured that company " on royalties payable to insured from the business of John Ellis & Co., carried on in premises situate in Brooklyn, on block bounded by Sullivan, Walcott and Ferris streets and Buttermilk channel," and then proceeded with a more specific statement, thus : " Whereas, the above-named firm of John Ellis & Co., by virtue of an agreement with the assured are bound to pay to them royalties for the privilege of using their patent, which royalties are guaranteed to amount to $250 a month ; now, therefore, the conditions of this insurance are that, in case the premises occupied as above by said Ellis & Co. shall be damaged by fire so as to cause a diminution of said royalties, this company will make good to the insured the amount of such diminution during the restoration of said premises to their producing capacity immediately preceding said fire. In case of the destruction by fire of said premises, then this company shall pay the full amount insured."   That full amount was $1,000.   Upon the trial the contract with Ellis & Co., referred to in the policy, was read in evidence, under an objection taken by the defendant, and was later

withdrawn from the case, the defendant again objecting;
but all controversy upon the subject seems to have been
terminated by a stipulation of the parties, which permitted
the original contract to be used on any appeal with the same
force and effect as if printed in the case.   It was so used in
the General Term, and the appellant's brief treats it as in
the case, but insists upon the objection taken to its admissi-
bility.   That objection is not well founded.   The royalties
insured were the product of the contract.   They sprang out
of that and were measured by it and depended upon it.
The parties recognized and acted upon the fact.   The policy
in terms refers to the contract as the origin and measure of
the royalties and recites the stipulations deemed most imme-
diately material.   We cannot perfectly understand the risk
assumed and the subject insured except by the very reference
which the policy made to the contract which created the risk
and disclosed and described the royalties.   It was properly
put in evidence, and we must assume that the recital in the
policy and the statement in the opinion of the General Term
fairly cover and express its conditions.

We are first to ascertain what loss was insured against.
The defendant company contends that the risk it assumed
extended no further than diminution of royalties below the
guaranteed minimum, and, since there never was such diminu-
tion, that the judgment rendered was erroneous.   But such is
not the proper construction of the policy.   That insured the
royalties payable under the contract; not merely the guaran-
teed proportion, but the royalties stipulated; that is, the whole
of them.   Up to the minimum amount they depended upon
the financial responsibility of Ellis & Co., for to that extent
they were payable in any event, and the risk was on the
licensees.   But beyond that they depended upon the running
capacity of the works, and the amount of oil they could put
upon the market, and which could be sold.   The phrase
"said royalties" in the policy refers to the royalties payable
by force of the agreement, and to the whole of them, and is
not restricted or narrowed by the descriptive statement that

they — that is the royalties insured — were guaranteed to be not less than $250 a month. Whatever they should prove to be they were insured against a diminution caused by fire at the works, and not merely a minimum proportion or guaranteed part of them.

But these royalties, it is argued, were not capable of supporting an insurance, and the policy was a wager policy. It is quite true that, beyond the guaranteed minimum, they were contingent and dependent upon the condition of the market, and even, possibly, upon the will or choice of Ellis & Co., in the reasonable control of their business. That firm was not bound to pay except upon oil manufactured and sold, and might limit both, or be compelled by the market to limit both to a production yielding no royalties beyond the guaranteed minimum; and so, it is said, the plaintiff had no fixed or definite right to royalties beyond such minimum, no assurance of their existence, no power to compel or demand their being, and could not be said to have lost what it neither had, nor the absolute right to possess. But a further fact in the case establishes more definitely the plaintiff's risk and loss, and the direct causative connection between that loss and the fire which injured the works. The license held by Ellis & Co. to use the plaintiff's patent, was an exclusive one, and the earning power of that patent was thus narrowed to the business of Ellis & Co. If the latter did not continue their business, and so preserve the fruitfulness of the patent, by reason of some fault of their own, or from a cause for which they were responsible, the exclusive character of the license ended, and the patentees were at liberty to transfer the right to others, and thus secure the profits of their invention. But if the business of Ellis & Co. was lessened or restricted because of a fire which should destroy or impair their works, the exclusive right given them was to continue; the patentees could not license others, and must necessarily bear the loss of their diminished royalties. This was the one business risk involved in their contract. Against all others they could provide, but this one they were compelled to bear by the terms

of their agreement. Against that risk they insured. It had a direct and necessary connection with the safety of the structures burned. A fire destroying them destroyed the royalties *pro tanto*, because the efficient cause of their loss, and so was established the needed connection between the premises insured and the royalties dependent upon their safety and measuring the loss resulting from their destruction. The policy was, therefore, not a mere wager, and the royalties could be protected by an insurance against the fire risk which threatened them.

The authorities in this State go far enough in their general principles to cover the case in hand. (*Herkimer* v. *Rice*, 27 N. Y. 163 ; *Springfield F. & M. Ins. Co.* v. *Allen*, 43 id. 389 ; *Rohrbach* v. *Germania Fire Ins. Co.*, 62 id. 47.) They decide that an interest, legal or equitable, in the property burned, is not necessary to support an insurance upon it ; that it is enough if the assured is so situated as to be liable to loss if it be destroyed by the peril insured against ; that such an interest in property connected with its safety and situation as will cause the insured to sustain a direct loss from its destruction, is an insurable interest ; that if there be a right in or against the property which some court will enforce upon the property, a right so closely connected with it and so much dependent for value upon the continued existence of it alone, as that a loss of the property will cause pecuniary damage to the holder of the right against it, he has an insurable interest. The plaintiff brought its case within these principles. A loss measured by the diminution of its royalties, was the inevitable result to it of a fire in the works of Ellis & Co. It could not substitute a new license and must await the repairs necessary to a renewal of the business. By its contract it became so situated relative to the buildings insured, that it had a direct pecuniary interest in their safety from accidental fire. That interest it could, as it did, insure.

We are further of opinion that no error was committed in the mode of ascertaining and measuring the loss. The amount of royalties paid for two months immediately pre-

ceding the fire was proved, also the amount during the time the works were being restored, and for some months thereafter. It was not confined to royalties upon the amount of oil actually burned. That could have been promptly replaced by Ellis & Co., with perhaps little delay and very moderate diminution of their volume of business. The bulk of the injury came from the enforced idleness of the works, against which, under their contract, the plaintiff company had no remedy. The amount of loss was established in the only manner possible, and upon sufficient facts for the formation by the jury of a reasonable conclusion. They were not left to a bare guess or speculation.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.