Argued March 28; modified June 25, 1940

GENTNER *v.* KERN ET AL.

(103 P. (2d) 721)

646

Department 1.

*Albert W. Gentner,* of Portland, for appellant.

*Clark S. Kendall,* of Albany (Marks & McMahan, of Albany, on the brief), for respondents.

ROSSMAN, J. This is an appeal by the plaintiff from a decree of the circuit court entered in a suit which he instituted for the purpose of securing a decree enjoining the defendants from the maintenance of two barricades upon a road in Benton county which the plaintiff claims is county road No. 173, but which the defendants claim, and the court found, is a private road. The decree, besides denying the relief sought by the plaintiff, enjoins him, in response to the prayer of the answer, from using a plank road built in large part by K. M. Vincent and F. M. Vincent. It was upon the plank road that the defendant placed the barricades. The plaintiff contends that the plank road and the alleged county road are the same. The defendants claim that at the two places where the barricades were erected, if not during its entire course, the plank road was built upon a private easement. There were not two roads in that area—only one. One of the issues, in fact, the principal one, is whether the plank road is, in fact, the improved county road. The defendants are the

Valley Mills Company and its president, L. R. Kern. We shall hereafter refer to the corporation as the defendant.

■ The complaint states that, pursuant to a petition filed June 3, 1885, and the action taken by the county court of Benton county, culminating in an order entered July 9, 1885, the alleged county road was established. The defendants admit that those proceedings were taken, but say that because of a conflict between the description employed in the petition and the one in the order, the latter was void. That defense, however, was not pleaded and therefore will not be considered. *Boire v. Yamhill County,* 53 Or. 36, 98 P. 520. They also contend that if the proceedings were valid the road never became anything more than a paper road; that is, that no use whatever was made of it. They direct attention to the following statute (§ 4101, Hills Ann. Laws 1887) which was in effect at that time:

"If any part of any road in this state shall not be opened for four years after or from the time of its location, the same shall become vacated."

We mentioned an easement. Concerning it the answer avers that after the Valley Mills Company acquired the easement it improved the right-of-way thus granted with a plank surface and that still later the plaintiff wrongfully made use of it. The plaintiff argues that the plank road, for at least a part of its length, followed the same course as the alleged county road. If that is true, then the defendant merely planked the public highway.

We believe that the following plat, which is in part a copy of a map prepared by one of the defendants' witnesses, will help to render understandable the situation which we shall now describe:

The above map shows that the defendant owns an 80-acre tract of land consisting of the S. E. ¼ of the N. W. ¼ and the N. E. ¼ of the S. W. ¼ of section 5. They purchased that property January 18, 1937, from K. M. Vincent and his wife, C. R. Vincent. The land, apart from the millsite thereon indicated on our plat, is principally valuable for its timber, much of which, however, has been removed by the defendant. The latter owns no other property in that vicinity. The plat also shows that the plaintiff owns 80 acres adjoining the defendant's tract upon the west. Like the defendant's, it contains a stand of timber. The plaintiff owns additional timberland adjoining his 80-acre tract. One Walter Shriner, under a contract with the plaintiff, is logging the plaintiff's land and in the S. W. ¼ of the N. W. ¼ has built a sawmill which is manufacturing the logs into lumber. Soap Creek, the course of which is indicated on our plat, is a small stream which flows easterly. Its course seems to afford the only means of access to and egress from the property owned by the plaintiff and the defendant. Shown on our plat is the Athridge tract upon which stands the home of Mrs. Goldie Athridge. Her home is indicated on our plat by the letter H and her barn by the letter B. Her home is the last habitation as one proceeds westerly through these lands. Alleged county road No. 173 is traced upon our map in the same way as W. C. Galloway, county surveyor of Benton county, drew it upon a map of which ours is, in part, a copy. Galloway, as a witness for the defendants, admitted that his tracing of the survey for that road holds the possibility of error. He explained that he did not have time to make the intermediate ties which were necessary to an assurance of accuracy. In tracing the course

of the alleged county road, Galloway used the records in the county court proceeding. The only other drawing showing the road is altogether too small to be of any help. Entering the vicinity of Sulphur Springs from the east is an established county road which leads to the Pacific Highway. Thus, the defendants' 80-acre tract lies between the plaintiff's timber and across to the market. Upon the tract which bears the name Athridge, we have indicated a sawmill by the designation Dillon Mill. It was a small affair, built in 1885, with a cutting capacity of 8,000 to 10,000 feet per day. It operated only occasionally and was dismantled a year or so after it was built. The Dillons were the principal petitioners for the establishment of the challenged road.

Upon our drawing is a double dotted line north of the indication of the purported county road. It represents the aforementioned plank road. We placed the dotted line in the same place that Galloway placed a similar marking upon his map. He swore that his was substantially correct. The Vincents, who in 1932 owned not only the tract of land shown on our map bearing their names but also the 80-acre tract now owned by the defendant, in that year graded a road near the southern boundary line of those two tracts. The road was later planked and is the one indicated by the double dotted line. Concurrently with the sale to the defendant of the aforementioned 80-acre tract K. M. Vincent, his wife C. R. Vincent, and their mortgagee E. S. Cook executed an instrument which granted to the defendant

"* * * an easement and/or right-of-way for road purposes over the following described real property * * *: Commencing at the center of Section 5,

Township 11 S. R. 5 W. of the W. M.; running thence East along the center line of said Section to a private road now established and in use by the grantors herein; thence North 20 feet; thence West and parallel to the center line of said Section to a point 20 feet North of the point of beginning and thence South 20 feet to place of beginning; and over said private road as now established and used by the grantors herein from the point where the above-described strip runs into the same to the county road known as the Soap Creek Road. * * * provided also that the grantors, their heirs and assigns, shall always have the right to reasonably use and enjoy said above-described right-of-way for all purposes which may not interfere or be inconsistent with the use by the grantee for the purposes above mentioned.''

It is seen from that instrument that the easement thus granted to the defendant extended across the Vincent tract. Its westerly terminus was the center of Section 5. West from that point lay the defendant's property. In the fall of 1937 F. M. Vincent and his son Kenneth, the aforementioned grantor, on behalf of the defendant, improved most of the graded road which crossed the Vincent tract by covering it with heavy plank laid upon wooden sills. Only the easterly 450 feet were left unplanked. They also planked a small part of the road which extended into the defendant's tract. Later the plaintiff, without permission from anyone and acting upon his own initiative, planked the 450-foot section just mentioned, as well as the unplanked part of the roadway upon the defendant's property. After the road had been thus improved he proceeded to use it for the purpose of bringing machinery into his property to build the Shriner mill and to haul piling and lumber to market.

January 5, 1938, K. M. Vincent, C. R. Vincent and E. S. Cook, the three individuals who had conveyed the aforementioned easement to the Valley Mills Company, signed a deed which granted to the plaintiff

"* * * an easement and right-of-way for road purposes over the following described real property: A strip of land commencing at the center of Section Five Township Eleven South of Range Five West of Willamette Meridian in Benton County, Oregon, forty feet wide extending from the center line of Section Five and the extension thereof, northerly a distance of forty feet and running from the center of said Section Five to the point where said strip intersects the County Road in Section Four, Township Eleven South of Range Five West of Willamette Meridian, and also over the property described in an easement and right-of-way granted by K. M. Vincent and C. R. Vincent, husband and wife, and Ernest S. Cook to Valley Mills Company, * * *."

It will be recalled that the easement which the Vincents granted to the defendant was not an exclusive one but reserved rights to the Vincents and their assignees. The deed to the plaintiff granted to him these rights together with an easement over an adjacent 20-foot strip.

The plaintiff contends that the plank road, or at least that part of it which crosses the defendant's and the Vincents' properties, follows the course of county road No. 173. That contention constitutes his justification for having planked the part which crosses the defendant's property, and likewise his justification for having traveled upon the road.

As we have indicated, § 4101 Hills Ann. Laws 1887, which was in effect at the time of the entry of the order for the establishment of the challenged county road, said that if any part of a road was not opened

within four years after "the time of its location" it should be deemed vacated. The defendants contend that that road was never opened. The plaintiff insists that the part of the survey extending westerly from the Dillon Brothers mill was opened by the Dillons as a skid road and that it was used as such. They also contend that the plank road follows the same course. A skid road is approximately eight feet wide and in its roadway, at intervals of about five feet, logs eight to ten inches in diameter are half embedded at right angles to the course of the road. Logs drawn by oxen are skidded over the surface of these embedded logs and are thus brought to the mill. The circuit judge who tried this case visited the area which we have been endeavoring to describe and, in holding that the purported county road was never established through use, said:

"The evidence in this case shows that about 1885 Dillon Brothers constructed and operated for a short time a sawmill on the tract of land lying immediately west of the property of the Valley Mills Company. The operation of this mill terminated when Dillon Brothers became financially embarrassed. The evidence further shows that the county road referred to in plaintiff's complaint was never opened beyond said Dillon Brothers mill. The evidence further shows that the plank road maintained by the defendants does not lie within the limits of said county road as surveyed and laid out upon the ground, excepting for a short distance immediately west of the premises of the plaintiff. The evidence further shows that this county road at the place where the surveyed county road and the plank road coincide was never opened up or used. In fact, none of the county road as surveyed across the premises of the Valley Mills was ever opened up and used as a county road, although there is some evidence that a skid road in that vicinity was used for a short

654

time in connection with the operation of the Dillon Brothers Mill. Such skid road, however, could never have been used for vehicular traffic."

It must be borne in mind that the two barricades which the defendant erected were placed by it upon the plank road—not in some other places. They were placed upon only that part of the plank road which crosses the defendant's property. Therefore, unless the plank road at those two places is upon the right-of-way of purported county road No. 173, no right which the plaintiff possesses was violated through the erection of the barricades. The witnesses who swore that west of the Dillon Brothers mill a roadway existed in 1885 and in the several succeeding years gave a very indefinite description of its course. We shall now review their testimony, but for the sake of clarity add that there is no issue concerning the existence of a road east of the Dillon millsite.

Lee Brown, who moved upon a ranch in the Soap Creek district in 1885 when he was 20 years of age, testified that at that time there was "a kind of logging road back in there, it went back up the creek for half or three-quarters of a mile maybe, I would judge, I am just guessing at it". He swore that at that time a wagon could have been taken over the road from the Dillon mill to the property now owned by the plaintiff. He said, however, "I never had occasion to do it." Finally, he added, "I tell you, if you were ever out in the mountains, them days we took wagons over pretty tough trail." Robert L. Marks, one of attorneys for the defendants, swore that shortly before the trial he interviewed Brown and that at its close he made a memorandum of what was said. Referring to the memorandum, he swore that during his visit with

Brown the latter told him that the road never extended beyond the western extremity of the Athridge property; in other words, it did not enter upon the property now owned by the defendant. Mrs. Athridge, who moved upon the property known as the Athridge place in 1885 when she was four years of age, was able to recall back to the year 1895. She testified that at that time there was a road extending from the Athridge property easterly about the same as now. As we said, there is no controversy concerning that road. Mrs. Athridge testified that extending westerly from the Dillon millsite and across the land owned by the defendant there was "a well-used trail, or it could be used as a road, a sort of skid road." Whether the road which she and Brown saw followed the course and made the turns and bends designated in the survey of purported county road No. 173, was not mentioned by them. Frank Seabrook, being the third and last of the plaintiff's witnesses, also described a skid road. He was 77 years of age, and in 1885 had worked for a month as a logger for Dillon Brothers. He swore that in 1885 or thereabouts a skid road extended westerly from the west line of the Athridge property for close to half a mile. His description of the course followed by the skid road, although vague, possesses more detail than that given by the other two. From it we quote:

"The skid road on the left side ran up a little way, a very short distance on the south bank and it ran up from the mill. * * * It ran from the mill up the right hand side of the creek. It was, as I said, pretty nearly half a mile or probably 600 yards, between 600 yards and half a mile, and they didn't get any timber out at all on either side until they got back a quarter of a mile but the skid road did run on the left hand side too, for a short distance.

"Q. The skid road then that ran from the Dillon mill ran along the north side of the creek? A. It ran along the north side of the creek.

"Q. Did it run on the south side or remain on the north side? A. It ran a short ways from the mill up there, and then it crossed over.

"Q. Then it crossed over. How far did it go down and then run up on the south side of the creek? A. A very little distance. I couldn't tell. Gracious, man, that has been

"Q. Was it 300 yards? A. 250 I guess where the mill was and from where the mill was that skid road ran up on the south side about 250 yards.

"Q. And then it crossed the creek? A. I didn't say it crossed the creek.

"Q. It was on the other side of the creek? A. Yes, on the north side.

"Q. It ran on the north side of the creek? A. It ran right up and by past where this mill is now. How far from where the mill is now, I couldn't say."

We come now to the defendants' witnesses. Kenneth Vincent, one of the grantors to the defendant of the easement, and his father built the aforementioned dirt road. The two later planked the portion of the roadway which extended across the Vincent tract. Kenneth testified that when he and his father graded the road they encountered no evidence of any skids or of a previous road except beyond their right-of-way he saw indications of an old skid road extending approximately 200 feet along a little stream that emptied into Soap Creek. According to him, there was a heavy growth of large trees and brush and approximately 30 stumps along the course where they were building the dirt road. Windfalls from two to four feet in diameter were lying upon the ground. Frank M. Vincent, father of the witness just mentioned, likewise swore that no signs of a previous road except those

described by his son were discernible. He testified that upon the right-of-way of their dirt road there were stumps, trees of large size and a heavy undergrowth of brush. Peter Johansen, who helped the Vincents build the dirt road, swore that he saw no evidence of a previous roadway. He helped to cut down trees which he thought must have stood there for a hundred years. Elmer E. Govier, who had lived in the Soap Creek vicinity for 37 years, said that before the aforementioned dirt road was built there were no means of passage to the west of the Dillon millsite; to the contrary, it was covered with timber from 75 to 100 years old. Alvin Govier, a brother of Elmer, had also lived in that vicinity for 37 years. He testified that he had a recollection from his early visits west of the Dillon mill of seeing an old logging road ''partly on the south side and which dodged over from that to the north side of the creek.'' He was unable to trace the course of that old skid road upon any map, but believed that some of the old skids still could be found. He mentioned another skid road and was then asked: ''Where was that one, up the creek?'' and answered, ''Up above the Dillon mill.'' The presiding judge then inquired: ''How far up did it go?'' and received the reply, ''I don't just recall, I didn't measure it, Your Honor.'' Apart from repeating that he could not indicate upon the map the skid road which he first mentioned, and saying, ''I could go up there and point it out on the ground,'' the foregoing is as far as he went in indicating the course, location, etc., of the two roads. He described the length of the first as follows: ''All of it I saw was a quarter of a mile.'' W. S. Tomlinson, 69 years of age, who moved into the Soap Creek country in 1873, hauled a few loads of lumber from the Dillon

mill when financial reverses caused it to cease operations. He testified that there was no road west of the mill, but that "there was a skid road, the tracks and logs, above that mill" and said that they did not extend "more than a quarter mile, it wasn't very far. * * * It crossed the creek up on both sides. I rather think it crossed the creek a couple of times." He described its construction thus: "Just the brush brushed out and skids laid across to track logs over." He could not describe upon a map the course of the road, saying, "Oh, I don't know, the skid road didn't run straight. It went over where the mill was up to where they were cutting the timber." John Olson, 73 years of age, who made his first trip west of the Athridge property about 40 years ago, after swearing that he never saw any road in that vicinity, added, "If there had been one I certainly would have liked to find it because I had to bring an axe to get through. I was riding a horse." E. A. Blake, 63 years of age, who was born in the Soap Creek district, in response to an inquiry as to whether he ever had seen a road west of the Dillon mill, replied, "I never saw any road, no road to my knowledge at all." W. E. Blake, who spent his early youth near Sulphur Springs and had been west of the Dillon millsite many times, said he knew of no road in that vicinity although he had been on both sides of the stream. He said that in that vicinity there were "lots of timber and brush * * *. It was large timber so far as I remember now." His father was one of the signers of the petition presented to the county court for the establishment of county road No. 173. Ed Logsdon, as a boy 13 or 14 years of age, hauled some material from the Dillon mill. When asked if he knew of any road west of it, he replied, "I think all I know of is a skid road

* * * on the north side, all I know of. I seen them drawing logs in with cattle." He gave no other description of the course of the road. Berl Calloway, 72 years of age, whose family moved into the Soap Creek country when he was six months of age, testified that the Dillon mill was a small affair which operated "whenever they got a chance." He said that the lumber was sold to the settlers and was not hauled out to market. He knew of no road west of the mill, adding, "You had to wind around through the brush and trees and such like to get through there." His father also signed the petition for the establishment of county road No. 173. At that time the witness was 18 years of age. He believed that the road was never opened.

All of the above-mentioned witnesses had made many trips west of the Dillon millsite. Some of them went there to hunt, others to fish, and still others as a part of a picnic group. Two or three of them were searching for stray cattle. The above constitutes a review of the testimony of all of the witnesses. If details are lacking, and we are sure that they are, the fault is that of the witnesses.

We believe that we have mentioned every part of every witness' testimony who undertook to describe the course of the old roads. We shall now summarize. None except Alvin Govier and the Vincents made any attempts to compare the course of the skid road with that of the present one. Govier was asked whether there was a possibility that the plank road crossed the old skid road and answered, "I couldn't say, but it may be on top of some of it." "May be" testimony, like all other guesswork, is worthless. The Vincents, as we have sufficiently indicated, swore that in grading the dirt road which preceded the planking

of it they encountered along its course no evidence of skids or of a previous road. Those two men were in the best position of all to know whether a previous roadway had existed along that course. Five of the witnesses were certain that there never was a road west of the Dillon millsite. However, since the testimony of those who say they saw an object is generally more likely to lead to the truth than that of those who give negative testimony, we are prepared to believe that a skid road actually existed in that general vicinity. However, the testimony of the five negative witnesses nevertheless satisfied us that the skid road was insubstantial and of but little consequence. The witnesses who say they saw a skid road placed it variously; for instance, Seabrook first said that it was south of the creek; next it was north of the creek; shortly he declared that it crossed the creek; and, finally, he protested, "I didn't say it crossed the creek." Alvin Govier said that it started south of the creek and "dodged over" to the other side. Logsdon saw a skid road on the north side. Tomlinson said that it crossed the creek "a couple of times." By glancing at our map it will be seen that the plank road is entirely to the north of the stream, but that Galloway's representation of the survey of the county road crosses the creek twice.

■ To avoid being misunderstood, we repeat that none of the witnesses traced the course of the skid road upon a map or in any other way described it in such a manner that we can compare its course with the survey of the county road. Some of the witnesses mentioned "here" and "there" as they referred to a map or indicated by gestures. Others spoke of a witness tree without describing its location. Occasionally someone pointed to a mark on Galloway's map without indicat-

ing by mark or other impression the spot which he had in mind. As stated in *Hyde v. Peirce*, 147 Or. 5, 31 P. (2d) 755, that method of indication imparts no knowledge to this court when it examines the record. The plaintiff's brief declares: "The skid road commenced as it did upon the north bank, crossed over to the south bank and recrossed to the north bank." If that is true, the proof in support of the statement is certainly scant and at variance with other proof. The quoted language continues: "in the same manner as the county right of way did." If the first group of words is true, they do not demonstrate the truth of the second group. If the entire sentence is true, its truth is not established by the testimony which we summarized in preceding paragraphs. There is no other evidence.

As we have already said, the plaintiff presented the testimony concerning the skid road in order to show that the purported county road was used within four years of the time when the county court's order for its establishment was entered. We repeat that no witness traced the course of the skid road in such a manner that anyone can compare it with the survey for the county road and thus determine whether the two were in the same location. In fact, all of the witnesses who were shown Galloway's map which contained representations of the creek, the survey for the county road, the course of the plank road and objects of local significance, protested their inability to trace the course of the skid road upon it. None volunteered a willingness to do so, or to say that the skid road and the county road occupied the same location. If we are to say that the two occupied the same location, we must assume that we possess greater knowledge than any of the witnesses, yet they were intimately familiar with

the district. It is evident that the plaintiff himself has never been certain of the course surveyed for the county road and that taken by the skid road. Otherwise, he would not have presented his proof in alternative form; that is, depending at one time upon a contention that the two pursued the same course, and at other times depending upon an interest in the plank road easement. Had he felt certain that the alleged county road ever existed, he would not have purchased the easement.

Once more we say that in order to sustain his suit it was necessary for the plaintiff to prove by a preponderance of the evidence that the barricades described in the complaint were placed by the defendants upon the right-of-way of alleged county road No. 173. Thus, the burden rested upon the plaintiff to prove not only that the proceedings for the creation of county road No. 173 resulted in the establishment of that road but also that the barricades were placed upon its right-of-way. In our opinion, he proved nothing more than that (1) following appropriate proceedings an order for the establishment of county road No. 173 was entered; (2) about that time a skid road was used for a short time which proceeded about one-fourth of a mile to the west of the Dillon mill; (3) later the Vincents built their dirt road; (4) still later they granted to the defendant the right to cross their property by means of that road; (5) after that transaction the Vincents, on behalf of the defendant, planked a part of the dirt road; (6) about that time the Vincents sold their remaining interest in the roadway to the plaintiff; and (7) the defendants placed upon that part of the plank road which covered the defendants' property two barricades. But there is no proof that the alleged county road, the skid road and the present

plank road, at the places where the two barricades were erected, occupied the same location. We are satisfied that the burden of proof which the plaintiff assumed when he instituted this suit has not been discharged. We are not satisfied that at the two places where the barricades were erected a county road ever existed.

■ There remains for decision the question as to whether or not the circuit court erred when it enjoined the plaintiff from using that part of the plank road that crosses over the Vincents' tract. The easement which the Vincents granted to the defendant conferred upon it no exclusive rights. The deed signed by the Vincents expressly states: "The grantors, their heirs and assigns, shall always have the right to reasonably use and enjoy said above-described right-of-way for all purposes which may not interfere or be inconsistent with the use by the grantee for the purposes above mentioned." The plaintiff is now, and was at the time this suit was filed, the Vincents' assignee. He is now the owner of those reserved rights.

The defendants argue that since the planks are only eight feet wide the road is a one-way affair and that, therefore, it is incapable of serving the needs of more than one operator. However, we observe that the defendant completely ceased all operations upon its tract in December, 1937, and transferred its activities to a tract five or six miles away which cannot be served by this road. We also observe that the plaintiff testified that only 250,000 feet of timber remain upon the defendant's tract and that the cost of its removal would be greater than the value of the timber. While the plaintiff was endeavoring to induce the defendant, for a consideration, to withdraw its objections to the plaintiff's

use of the plank road, Kern (defendant's president) said that it would be necessary for the plaintiff to conclude the transaction immediately; otherwise he would tear up the road. According to the plaintiff, Kern said at that time, "I have no further use for that plank road and I can use the plank in another place." The plaintiff announced a willingness to limit Shriner's use of the road in such a manner that it would not interfere with the defendant's convenience. He also expressly stated that he was willing to pay for the use which would be made of the road and bear more than his share of the expense of its maintenance. He swore, and we believe that he was telling the truth, that every time the parties were on the verge of agreeing upon the amount which the plaintiff should pay, Kern increased his demands. Finally, according to the plaintiff, Kern insisted that he purchase the planking, the 80-acre tract and its standing timber. This the plaintiff was willing to do, but desired that the amount of the timber be ascertained by two cruisers, one to be appointed by him and the other by Kern; a third to be chosen by the two in the event of their disagreement. When Kern, however, insisted that the plaintiff pay according to his (Kern's) cruise the negotiations came to an end. We stated that the defendant ceased operations upon its 80-acre tract December, 1937. The Shriner mill did not begin to cut lumber until December, 1938. In the meantime, the defendant made virtually no use of the road. The circumstances which we have just recounted persuade us that the excuse now offered that the plaintiff's use of the road would interfere with the defendant's superior rights is an afterthought.

We believe that the prayer of the defendants' an-

swer should have been denied and that the circuit court should not have enjoined the plaintiff from the use of that part of the plank road which crosses the Vincent tract. In using the road the plaintiff will have to observe the defendant's superior rights, but these he says he does not propose to violate.

We have not overlooked the fact that the plank road as traced upon Galloway's map does not seem to follow with technical accuracy the course recited in the deed which created the easement. Galloway, referring to his map, said that the double dotted line indicated with substantial accuracy the course of the road. Kenneth Vincent, who with his wife and their mortgagee, was one of three signers of that deed, said that the dotted lines on Galloway's map represent the road which he built and the easement which he granted to the defendant. Continuing, he said, "We started out and picked the best place for it. We didn't have any surveyor's stakes or anything like that to go by." It is apparent that if the plank road does not follow with technical accuracy the course outlined for the easement, Vincent does not present any objection. Thus it is seen that Vincent, one of the grantors, and being also the person who built the road, far from challenging the defendant's right to enjoy the easement, acquiesced in the defendant's rights by testifying in support of the roadway as it is now being used. We believe that the roadway as built follows with the required degree of accuracy the course described in the grant.

We find only the error mentioned above. The cause is remanded to the circuit court with instructions to modify its decree in the above particular.

RAND, C. J., and BELT and BAILEY, JJ., concur.