Argued October 10, affirmed November 2, petition for
rehearing denied December 12, 1956

## PHILLIPS ET UX v. PODRABSKY ET AL

303 P. 2d 212
304 P. 2d 942

*Peery T. Buren* and *Allan G. Carson* argued the
cause for appellants. With them on the brief was
Wallace P. Carson, all of Salem.

*Asa L. Lewelling,* Salem, argued the cause and filed
a brief for respondents.

ROSSMAN, J.

This is an appeal by the plaintiffs, Keith and
Margaret Phillips, husband and wife, from a decree

which the circuit court entered in their favor, but which did not grant them the entire relief their complaint sought. The suit arose out of a contract which the plaintiffs and the defendant, Arey Podrabsky, executed August 17, 1946. By the contract, the plaintiffs sold to Podrabsky and his assigns "all of the said merchantable or marketable timber and poles" upon a tract of land owned by the plaintiffs and described in the instrument. The purchase price was $5,000. The contract set forth the rules governing the payment of the purchase money and the removal of the timber. In addition to Podrabsky, the defendants-respondents are John Murphy, Colis F. Heath and Heath Bros. Logging Company, a corporation.

The complaint, after alleging breach of the contract, sought the following relief: (1) cancellation of the contract; (2) an injunction restraining the defendants from entering further upon the premises; (3) damages in the sum of $4,718 as "single damages" and $22,500 as "treble damages"; (4) $100 interest money; (5) costs; and (6) such other relief as the facts suggest as equitable.

The challenged decree granted the plaintiffs judgment against the defendant Podrabsky for (1) $1,000 damages; (2) $100 interest money; and (3) costs and disbursements. It dismissed the suit as to the other defendants.

Upon appeal, the plaintiffs seek from this court, according to their brief, the following: " * * * single damages in the sum of $3,868, and treble damages in the sum of $22,500, and balance of interest unpaid in the sum of $100, and plaintiffs' costs and disbursements."

Upon the trial, the evidence showed the facts which we will now mention. The plaintiffs own 360 acres

of land in Marion county, 240 of which contain some timber. The land lies about three miles east of Mehama and had been logged in 1910-1912. When the contract which under lies this suit was signed August 17, 1946, the plaintiff, Keith Phillips, estimated that there stood upon the land one million feet of timber. He thought that about 200,000 to 300,000 feet of that total was old growth and that the balance was second growth. The contract which the plaintiffs and Podrabsky signed required the logging operations to be performed "in a workmanlike manner and in accordance with the standard of the best logging practices obtaining under similar conditions in the State of Oregon." It further provided: "Purchaser to care for all forest regulations including their regulation as to whether the slash is burned or not." The contract allowed four years for the cutting and removal of the timber.

It developed that more timber stood upon the land than the plaintiffs had estimated. According to plaintiff Keith Phillips, Podrabsky removed from the land about one million feet and then an assignee of his, Ed Goschie, took off about 340,000 feet more. Still later, the contract was assigned to the defendant, Heath Bros. Logging Company, which removed 750,000 feet. The defendants, Murphy and Heath, are officers of that corporation, but did not themselves become assignees of the contract.

Heath Bros. Logging Company, in the latter part of April, 1950, commenced to move their logging equipment upon the property preparatory to their operations. The plaintiffs claim that by that time the terms of the contract had been breached. According to them, (1) about 80 rods of the fence which marked the east line of the property had been destroyed by Podrabsky's

operations and had not been replaced; (2) three gates had been destroyed by logging trucks; (3) many logs had been left lying upon the ground although prevalent logging practices demanded their removal; (4) slashings were left upon the ground unburned, notwithstanding that good practices demanded their destruction; (5) seed trees, essential to reproduction, had been destroyed; (6) logging trucks, contrary to provisions of the contract, had passed over the edge of a cultivated field and thereby had destroyed parts of a growing crop. Believing that the contract had been violated in the above manner, the plaintiffs sent Heath Brothers notice not to proceed with their contemplated operations. Notwithstanding receipt of the notice, Heath Bros. Logging Company proceeded with their operations and removed 750,000 feet of timber. The plaintiffs-appellants' brief says:

> "There is no claim that defendants Murphy, Heath or Heath Bros. Logging Company conducted their operations in an unworkmanlike manner, but there can be no doubt that they conducted them while wilfully engaged in trespass."

Accordingly, the relief which is sought against those three defendants is based upon a contention that, since they proceeded after receipt of the aforementioned notice, their acts were wilfull and made them trespassers.

The contract did not require that the entire $5,000 of purchase money should be paid at once, but rendered $3,500 payable in two installments subject to six per cent interest. It is in that manner that the plaintiffs claim judgment for $100. Plaintiffs-appellants' brief says:

> "Because of the passage of time the issues in respect of cancellation and injunctive relief became

moot even before 29 May 1953, the date of render-
ing the memorandum opinion. By then there was
nothing left to cut, and the prevailing defendants
had moved from the premises.''

It is for that reason that the plaintiffs-appellants
seek in this court no relief except damages. As we
have said, the challenged decree awarded the plain-
tiffs $1,000 damages against Podrabsky and the further
sum of $100 interest money. Specifically, the plaintiffs-
appellants seek from this court the following, accord-
ing to their brief:

"* * * an increase in the award of damages
for the breaches of defendant Podrabsky committed
in the course of his logging operations, and an
award of treble damages for the cutting and re-
moval of timber which occurred as an aftermath
of trespasses by defendants Heath Bros. Logging
Company, John Murphy and Colis F. Heath."

The trial judge prepared a memorandum opinion
which gave his reasons for the awarded relief. It
states:

"It is the opinion of the court that the evidence
fails to establish grounds for cancellation of this
contract; therefore, plaintiffs' prayer for damages
in treble the amount of the value of the timber
removed subsequent to April, 1950, will be denied.

"There is no evidence which will support a
finding that the premises were in any way dam-
aged by the defendants Heath Brothers Logging
Company, John Murphy or Colis F. Heath and,
therefore, as [to] such defendants the complaint
will be dismissed.

"There is evidence in the record which will sup-
port a finding that the defendant Podrabsky, dur-
ing the course of his operations under the contract,
did a considerable amount of damage to the
premises for which he is liable to the plaintiffs.
Plaintiffs will be allowed judgment against the

defendant Podrabsky in the amount of $1,000.00 and costs. Plaintiffs will also be allowed judgment against the defendant Podrabsky for the sum of $100.00 unpaid interest on the purchase price of the timber.''

The parties are not in disagreement upon any controlling issue of law. The appeal presents nothing more than issues of fact, important though they are. We have read the entire transcript of evidence consisting of 588 pages. We have also examined with care the exhibits, 25 in number. The trial judge had, not only the incomparable advantage of seeing and hearing the witnesses, but an additional advantage which is also denied us and which we will now mention. During the trial, a map was drawn upon a blackboard in representation of the plaintiffs' property. Thereupon many of the witnesses resorted to the blackboard for the purpose of portraying better the incidents which they narrated. An occasional one, taking chalk in hand, added additional lines upon the blackboard as he sought to present better his version of the facts. The record indicates that the trial judge's interest in that courtroom adjunct was enlisted and that he, too, asked an occasional witness something about the blackboard map. The blackboard evidence was important since it portrayed the progress of the logging operations and the places where the alleged breaches are said to have occurred.

This court has several times mentioned the difficult position in which we are cast in conducting a trial de novo when a blackboard was employed in the circuit court, or a witness, while resorting to a map, answered ''here'' or ''there,'' but we are unable to determine the place to which he referred. *Birks v. East Side Transfer Co.*, 194 Or 7, 241 P2d 120; *Shaver Co. v.*

*Eagle Star Insurance Co.,* 172 Or 91, 139 P2d 769; *Gentner v. Kern,* 164 Or 645, 103 P2d 721; *Overstock v. United Railways Co.,* 68 Or 197, 137 P 195.

Notwithstanding the absence of the blackboard, we believe that we have gleaned from the record a satisfactory impression of the facts. We think that Podrabsky left upon the ground slashings and a number of logs which are now worthless. His operations destroyed about 100 rods of fence, three gates and the edge of a hayfield. It may be that he also damaged a small amount of new growth.

As a witness, the plaintiff, Keith Phillips, gave some specific estimates of the damages which the plaintiffs claim. The following are his estimates: $246, damage to plaintiffs' fences; $1,000, damage resulting from destruction of unmerchantable timber that was valuable for reseeding and on account of the fact that the logs were left on the ground; $400, loss of pasture rental due to the fact that fences were destroyed and logs upon the ground hindered the grazing of livestock; $50, damage to part of plaintiffs' hay crop caused by the wheels of logging trucks; $70 or $75, representing the value of Phillips' time and that of his son while engaged in burning some slash which Podrabsky failed to destroy; $2,000, estimated cost of burning the remaining slash; $1,800, damage to a 4-acre part of their land which the plaintiffs deemed suitable for cottage sites, and where, according to the plaintiffs, Podrabsky operated in an unworkmanlike manner.

The plaintiffs have lived upon the tract involved in this suit since 1939 and were residing upon it when the logging operations were underway. They were conducting farming operations upon a part of the tract.

It will be observed that the major breach which the plaintiffs charge to the defendants relates to slash. The plaintiff, Keith Phillips, to whom we will refer as Phillips, is a state fire warden and as such is intimately familiar with the rules and practices which govern protection of forest lands from fire hazards and require the destruction of logging slash. One of his neighbors is an individual by the name of Elmer Taylor, who is forest supervisor and inspector. Taylor is Phillips' superior in the latter's work as a fire warden and became one of the plaintiffs' principal witnesses upon the subject of slash, the rules requiring its destruction and other regulations for the protection of forest lands from fire. Taylor had been, so he said, upon the plaintiffs' land "at least a hundred times." He testified: "I give the instructions to burn, and those instructions go through to Mr. Phillips." In that manner he and Phillips are associated in their work. Taylor added, "It is my job to see that instructions which have been given are followed, and to see that instructions to burn have been given." Under the practices which he employs, the initiative in regard to burning of slash is taken by him and assumes the form of orders for the burning of slash. The only instruction which he gave to Podrabsky to burn slash was given in 1947 and was obeyed, so Taylor acknowledged. Upon another occasion, as we have seen, Phillips and his son burned some of the slash which Podrabsky had left upon the ground. Before they did so, Phillips had uttered no complaint. So far as we can determine, his burning of that slash was upon his own volition. As a witness, he estimated that the value of his time and that of his son which was devoted to the burning of that quantity of slash was $70 to $75. The plaintiffs concede that adverse

weather conditions denied to Heath Bros. Logging Company opportunity to burn the slash which their operations produced. Witnesses gave additional explanations for the fact that slash remained upon the property at the conclusion of the four-year period. Until the plaintiffs had their attorney write to Heath Bros. Logging Company in May of 1950 that Podrabsky had breached the contract, they had voiced no substantial complaint about the slash. It is true that when Goschie was contemplating becoming the assignee of the contract, Phillips made some complaints about the manner in which Podrabsky had conducted his logging operations, but the complaints centered largely in Podrabsky's failure to have repaired damaged parts of the fence which stood on the east line of the property. Some conferences then took place and adjustments were made. After Goschie entered upon the property, logging operations were conducted in a manner satisfactory to the plaintiffs. The fact that Phillips was thoroughly familiar with the rules governing the destruction of slash, and that he postponed the utterance of his complaints upon that subject until after he thought that Podrabsky had taken from the property sufficient timber may indicate that he recognized merit in the reasons which Podrabsky gave for his failure to have set fire to the slash.

It is clear that Podrabsky damaged about 100 rods of fence while conducting his operations. The fence was made of woven wire strung upon poles which were set in the ground. It was built prior to 1939 and, accordingly, was at least eight years old when Podrabsky began his work. The record indicates that time had taken some toll from the fence and that it was down at places. The contract provided that "in the

event any fences are damaged, the purchaser agrees to properly repair the same and place into the same condition as prior to the damage." The only segment of the fence which received serious mention during the trial stood upon the tract's east line. After the plaintiffs had made complaint about the damage to the fence, Podrabsky had Goschie bulldoze the right of way of the fence over its entire easterly line for a distance of about 2,000 feet and to a width of 14 to 25 feet. Phillips was well satisfied with the result. When the plaintiffs discovered that fence wire of the required kind was available in a local store, Podrabsky promptly authorized them to purchase it at his expense. The purchase was made. After Phillips strung the wire he had a substantial amount left. The plaintiffs claim that they were subjected to an expense of $246 for stringing the wire and setting posts.

Plaintiff Keith Phillips swore that three of his gates were damaged by Podrabsky's operations. At least one of the gates was repaired by the workmen who did the damage. He swore that the plaintiffs voiced no objection to the rebuilt gate.

We believe that the damage to the hayfield was negligible. If any substantial damage was done to the property as reforestation land, we are aware of no means of calculating the amount. It is clear that the defendants, Heath, Murphy and Heath Bros. Logging Company, did no damage. To the contrary, they removed some logs upon the ground.

The trial judge, in recognition of the foregoing, awarded plaintiffs $1,000 damages against Podrabsky. We cannot say from our review of the situation that the award was inadequate or lacking in justice. Al-

though we have read with care the plaintiffs-appellants' brief, we have come upon no reason for believing that the excerpts which we quoted from the memorandum opinion are unsound or should be disregarded. As we have said, we read and studied the entire transcript of evidence. In our understanding of it we were aided by the numerous photographs of the premises submitted by the plaintiffs. It is our belief that the challenged decree should be affirmed.

Affirmed.

**ON PETITION FOR REHEARING**

ON APPELLANTS' PETITION FOR REHEARING
Peery T. Buren, Wallace P. Carson and Allan G. Carson, Salem, for the petition.
Asa L. Lewelling, Salem, for respondents.

ROSSMAN, J.

This cause is before us again, this time upon a petition, filed by the appellants, for a rehearing. The

petition reiterates the contentions which were presented in the appellants' original brief, but submits no new authorities or grounds of reasoning. We have given the petition careful consideration. We remain satisfied that our original opinion correctly determined the cause.

In our original opinion we stated that during the trial in the circuit court a blackboard was used by several of the witnesses in their portrayal of the facts, and that they uttered "here" and "there" as they pointed to places upon the board. Our opinion stated that the blackboard did not become a part of the record which was sent to this court and directed attention to the fact that in instances of that kind a void occurs which may render it difficult to try the cause de novo upon appeal. Possibly the manner in which we referred to the situation may create an impression that counsel for the appellants were remiss in not getting their record into shape during the trial for an appeal, if it developed that their clients wished an appeal. We, therefore, think that the following facts should be disclosed.

Before any briefs whatever had been filed, counsel for the appellants had occasion to account for the absence of a sketch of the appellants' property which the court reporter had identified as Exhibit 13. In their efforts to explain the disappearance of the exhibit, the appellants filed two affidavits. The sketch was employed during the trial in the circuit court, and witnesses made marks upon it as they spoke of "here" and "there." When our original opinion was written, we noticed the absence of the sketch, but had no knowledge of the affidavits. When a diligent search made by us failed to locate the sketch we inferred that it was the same object as the blackboard. It now

develops that our inference was incorrect—the drawing which the court reporter marked Exhibit 13 was fastened to a blackboard for the purpose of convenient use and, hence, was referred to as one. It was actually, however, a drawing upon a sheet of paper.

From the above we see that counsel for the appellants took the precaution in the trial court of using a drawing upon paper which could be preserved for transmission to this court. Their precaution represented good practice and constituted the proper means of employing plats and drawings upon which witnesses are asked to make notations as they point to "here" and "there." A drawing upon paper, which can be sent to the reviewing court, should always be employed rather than one upon a blackboard. We make the above explanation lest any inference adverse to counsel's competency to prepare a record for appellate review be drawn. Since we stated in our original opinion that we were able to reconstruct the scene of the logging operations through use of the many photographs which showed the terrain, the explanation concerning Exhibit 13 does not require a reversal.

The petition for a rehearing is denied.

WARNER, C. J., did not participate.